## OSBORN *v.* CHARLEVOIX CIRCUIT JUDGE.

114 655
e127 137

114 655
s72NW 982
130 625

114 655
e134 ³187

114 655
135 ⁵526
135 ⁵529

114 655
148 ⁶485

114 655
156 634

1. STATUTES—TITLE—GERMANE PROVISIONS.

 The title of Act No. 151, Pub. Acts 1897, "An act to regulate the catching of fish * * * by the use of * * * nets * * * and other apparatus," sufficiently covers provisions prohibiting the taking of fish during a portion of the year, and prescribing means whereby the law may be enforced.

2. SAME—FISHING REGULATIONS—SIZE OF NETS.

 Act No. 151, Pub. Acts 1897, § 1, prescribes the minimum extension measure of the meshes of nets to be used in the waters of the State, and forbids the use of any but those prescribed, after April 1, 1900. Section 2 makes it unlawful to market or have in possession any sturgeon or rock sturgeon weighing less than 15 pounds, or any whitefish weighing less than 2 pounds; with an exception as to fish caught in gill nets of lawful size. Section 5 provides that all nets bought after the passage of the act shall be of the size prescribed. *Held*, that the sections, construed together, establish the following as the intent of the legislature: (1) Any net which conforms to the pre-existing law at the time the act took effect may be used by its then owner until April 1, 1900. (2) All other nets must conform to the new regulations. (3) All fish of the description and size mentioned in section 2 must be returned to the water, in whatever net taken, except where taken in gill nets of lawful size.

3. SAME—INTERPRETATION CONSISTENT WITH CONSTITUTIONALITY— DISCRIMINATION.

 The statute is not open to the objection that it discriminates in favor of those fishermen owning gill nets, at the time of the passage of the act, with a mesh of a less extension than that prescribed therein, since the presumption in favor of the constitutionality of legislation authorizes an interpretation that the term "lawful size," as used in the exception to section 2, means the size prescribed in the statute itself.

4. SAME.

 The fact that, even with such a construction, the gill-net fisherman is allowed to retain fish which others must return to the water, does not make the legislation discriminatory, since the use of gill nets of lawful size is open to all fishermen.

5. SAME—TIME OF TAKING EFFECT.

The legislature may give immediate effect to part of an act, and postpone the operation of the remainder; and, where such an intent is fairly deducible from the act, there is no presumption against it.

6. SAME—CLASS LEGISLATION.

An act regulating the catching of fish in the waters of the State is not void as class legislation because the close season is shorter in the waters adjoining a particular county than elsewhere.

7. SAME—STATE FISH WARDEN—AUTHORITY TO INSTITUTE PROSECUTIONS.

Under Act No. 110, Pub. Acts 1893, § 2, authorizing the game and fish warden to enforce all laws for the protection of fish, "now in force or hereafter enacted," and to bring suit for the violation of such laws, the warden may institute prosecutions before a justice of the peace under Act No. 151, Pub. Acts 1897, regulating the taking of fish with nets, and making infractions of such act misdemeanors.

8. SAME — SEIZURE OF NETS — DUE PROCESS OF LAW — POLICE POWER.

Act No. 110, Pub. Acts 1893, §§ 2, 3, authorizing the state fish warden to seize all nets "found in use in violation of the law," and providing that all fish or nets seized shall be disposed of in such manner as may be directed by the court before which the offense is tried, and that the warden shall not be liable in damages for the seizure or destruction of nets "in accordance with the provisions of this act," is not within the inhibition against deprivation of property without due process of law, since the right to seize is a valid exercise of police power, and the act requires a judicial determination of illegal use before the property can be destroyed.

9. COURTS—ENJOINING CRIMINAL PROCEEDINGS.

Courts of chancery should not enjoin criminal prosecutions on the theory that the law under which they are brought is unconstitutional, as such fact is available at law by way of defense to the criminal charge.

*Mandamus* by Chase S. Osborn, state game and fish warden, to compel Roscoe L. Corbett, circuit judge of Charlevoix county, to dissolve a temporary injunction restraining the enforcement of certain laws regulating the taking of fish. Submitted November 5, 1897. Writ granted November 12, 1897.

*Fred A. Maynard*, Attorney General, and *Roger I. Wykes*, for relator.

*Fred W. Mayne, A. D. Cruickshank*, and *J. D. Turnbull*, for respondent.

HOOKER, J.   Late in October last a bill of complaint was filed by one O'Neill against the relator, who is game and fish warden, praying that' he be restrained from enforcing the provisions of Act No. 151 of the Public Acts of 1897, entitled "An act to regulate the catching of fish in the waters of this State, by the use of pound or trap nets, gill nets, seines, and other apparatus," and Act No. 110 of the Public Acts of 1893, which provides for the seizure of such apparatus when used in violation of law, upon the ground that said Act No. 151 was unconstitutional, or, if not unconstitutional, that it did not become operative until April 1, 1900, and that the provisions of Act No. 110, alluded to, were unconstitutional, in that they authorize the taking of private property without due process of law.   A temporary injunction was allowed, dissolution of which was refused.   Thereupon the relator obtained an order requiring the respondent to show cause why said injunction should not be dissolved, and the question is before us upon respondent's return.

It is obvious that the proceedings have been brought for the purpose of determining whether the provision of Act No. 151 prohibiting the taking of fish during a portion of the year is valid, and whether it has effect before the year 1900.   The alleged unconstitutionality of Act No. 151 is ascribed to a defective title, in that it prohibits, during a portion of the year, while it professes to regulate, the taking of fish.   It is said that this prohibition is not mentioned in the title, and, again, that prescribing certain methods and apparatus is a regulation, which is the only object stated in the title.

We may reasonably conclude that the object of this, like other fish laws, is to preserve the industry of fishing, and a valuable food product, by protecting fish during certain

seasons, and preventing the taking of young fish that have not reached a proper size. Any provision that tends to these ends, which recognizes a reasonable exercise of the right to take fish, and prescribes rules under which it may or may not be done, is within the term "regulation." This rule has been so frequently applied that we think it unnecessary to indulge in an extended discussion of the subject. There is such a thing as making a title unnecessarily restrictive, whereby the act is limited to certain methods of regulation; but a better practice is to provide a broad title, as in this case, when it will cover any legislation that can fairly be said to tend to the accomplishment of the object. The designation of a season for taking fish is a regulation, as much as a limitation upon methods, and provisions looking to the enforcement of the law through punishment for the prohibited acts are also within such titles. See *People* v. *Brooks*, 101 Mich. 98, where some of the authorities are cited.

The more troublesome question is one of construction. Section 5 of the act provides that all nets bought after the date of the passage of the act shall be of the size prescribed. We cannot hold that this provision became effective before the act became a law under the Constitution, but, on the other hand, it is clear that it was not intended that it was to take effect in the year 1900. The language is unequivocal, and excludes any such theory. We may start, then, with the proposition that the legislature sought to prevent the purchase of nets, having meshes smaller than those required by the act, from the time that the act became a law, viz., three months after adjournment. Section 1 of the act forbids the use of any nets but those prescribed, after the year 1900. Inferentially, at least, the two sections, taken together, recognize the right of owners of existing nets to use them until 1900, although they do not conform to the new regulations. It may be said that here is an unjust discrimination, which permits one man to use a net with a mesh of less than four inches extension, while it forbids another

from doing so.   There might be force in this if the former
were permitted to profit by such use, but, if the law re-
quires him to return to the lake all fish which would
escape the larger mesh, then the law, if it be discrimina-
tory at all, discriminates in his favor by permitting him
to utilize the nets that he has on hand, thereby taking
small fish of varieties not protected, while it denies to
those not owning nets the privilege of using nets having
a smaller mesh.   Section 2 appears to disclose this intent,
making it unlawful to market or have in possession any
sturgeon or rock sturgeon weighing less than 15 pounds,
or any whitefish weighing less than 2 pounds : *Provided,
however,* that it shall not be unlawful to market or have
in possession any such fish caught in gill nets of lawful
size.   The effect of this provision is to prevent those who
use the old net with the smaller mesh from using or
marketing these fish, and therefore implies that they must
allow to escape, or return to the water, all fish taken be-
low the prescribed size.   Added force is given to this
implication by the requirement as to sturgeon.   We may
doubt if a 15-pound sturgeon would escape from a net
with four-inch meshes, and, if not, it must follow that they
cannot be utilized if taken in such nets.   All, therefore,
regardless of the net used, are forbidden to take such fish,
except those who use " gill nets of the lawful size."   The
exception may be ascribed to the fact—if it be a fact—
that the gill net is usually fatal to fish that are caught in
it, and it would be a wanton waste to throw away such
fish.   Under this construction of the sections, the follow-
ing summary may be useful:

1. Any net which conforms to the pre-existing law at
the time Act No. 151 took effect may be used by its then
owner until April 1, 1900.

2. All other nets must conform to the new regulations.

3. All fish of the description and size mentioned in sec-
tion 2 must be returned to the water, in whatever net
taken, except where taken in gill nets of lawful size.

We have said that under section 1 all existing nets may

be used until the year 1900. This includes gill nets, and it therefore follows that if all fish taken in such gill nets may be marketed, while all caught in other nets of the same mesh may not, the practical operation of the law would be to permit the gill-net fishermen to profit from fish which others must return to the water. There would be an inducement to use such nets as long as possible, and the remedy intended by the law would be retarded thereby, and a discrimination would be practiced under the law. But in dealing with statutes we must give them such a construction as will avoid such results, if possible. There is always a presumption in favor of constitutionality, and this presumption justifies a construction which is rather against the natural interpretation of the language used, if necessary to sustain the law. See 23 Am. & Eng. Enc. Law, 349, where a long list of cases is cited. A presumption nearly or quite as strong prevails in favor of a construction which will not do injustice. Id. 358, 359, and notes. If we shall construe the proviso to have reference to gill nets having meshes of the size prescribed in the act, viz., $4\frac{1}{2}$ inches ( i. e., if that be what is meant by the term "lawful size"), we avoid this difficulty; for then those who use gill nets of smaller mesh may not market these fish, and the only possible discrimination remaining is the right to use and market such fish as may happen to get caught in a net of $4\frac{1}{2}$ inch mesh. We have already indicated that, where the use of either kind of net is open to all on equal terms, there is no discrimination. Under the law, the use of gill nets of smaller mesh than $4\frac{1}{2}$ inches is *not open to all*, because only those in existence at the time the law took effect can lawfully be used, except as provided by section 1, which permits the use of a smaller mesh for all nets, where used for the purpose of taking any fish except whitefish, lake trout, and black bass, in places where it can be shown that the annual catch does not contain to exceed 10 per cent. of whitefish or trout; but here all persons are upon an equality, for all who wish may have gill nets in such places,—hence no

discrimination, though he who uses the gill net lawfully (*i. e.*, as prescribed in Act No. 151) may retain small fish, and others may not.

We are of the opinion that there is nothing in the discussion thus far that is inconsistent with the contention that this law is now operative, and that section 1, prohibiting the use of existing nets, or those different from the nets prescribed therein, after the year 1900, does not necessarily imply that none of the provisions of the act can become operative until that time. We have seen that section 5 expressly shows the contrary, and we have endeavored to show that none of the provisions discussed are necessarily inconsistent with its earlier operation. Another provision should, perhaps, be referred to in this connection, viz., a provision in section 4, which says, "*Provided, further*, that nothing contained in this act shall be construed so as to permit fishing with nets and other appliances contrary to the provisions of the present laws prior to the said 1st day of April, 1900." We are not advised that any net or apparatus permitted by this act is excluded by pre-existing laws. If it were, it might be an argument in favor of respondent's contention. As it is, we may suppose the proviso was intended to preclude any possible failure of this act to maintain existing regulations until it should become fully operative. There is nothing to prevent the legislature giving immediate effect to a portion of an act, and postponing the operation of the remainder; and there is no presumption against it, where such intent is fairly deducible from the act. *Plummer* v. *Jones*, 84 Me. 58; *Workman* v. *City of Worcester*, 118 Mass. 168; *Stone* v. *City of Charlestown*, 114 Mass. 214.

Thus far we have not discussed section 3,—which is the section providing for the "close season,"—with reference to the question of construction, for the reason that it contains nothing that tends to support respondent's contention. It is perhaps as consistent with one theory as the other. This section prohibits fishing from October 30th to December 15th with any kind of a net, with certain

exceptions. We have no doubt of the authority of the legislature over this subject. *People* v. *Brooks, supra; Lawton* v. *Steele*, 152 U. S. 133, 136.

It is urged further that the act is unconstitutional for the reason that the close season is shorter in the waters adjoining the county of Monroe than elsewhere, and that, therefore, this is class legislation. We have no means of determining why the legislature made an exception of this portion of the Lakes. We must presume that it had adequate reason therefor, and we cannot declare the law void upon that account unless it clearly infringes the Constitution. It cannot be called class legislation, for any citizen is at liberty to fish there during the open season.

From what has been said it will be rightly inferred that we consider Act No. 151 valid legislation, and that its provision for a close season is now in effect. It would follow that the injunction restraining the prosecution of persons for infractions of this law was without warrant of law, and improvidently allowed.

Act No. 110 is yet to be considered, as the injunction restrains the seizure and destruction of nets and apparatus for fishing, which the bill charges the defendant with threatening. This act amends certain sections of Act No. 28 of the Public Acts of 1887, being "An act to provide for the appointment of a game and fish warden, and to prescribe his powers and duties." Section 2 provides that:

"It shall be the duty of said game and fish warden to seize all nets of illegal mesh found in use in the waters of this State, and all nets and other fishing apparatus or appliances found in use in violation of the laws of this State, and to enforce the statutes of this State for the preservation of moose, * * * and fish, and to enforce all other laws of this State for the protection of * * * fish, now in force *or hereafter enacted,* and to bring or cause to be brought, and to prosecute or cause to be prosecuted, actions and proceedings, in the name of the people of this State, to punish any parties for the violation of said statutes and laws. Such actions and proceedings may be brought in the name of the people, in the like cases, in the

same courts, and under the same circumstances as they may now or at any time hereafter be brought by any individual, or by the prosecuting attorneys of the several counties, *under and by virtue of any laws now existing or hereafter enacted.*"

Under this provision it is competent for the game and fish warden to institute prosecutions under section 4 of Act No. 151 (which makes infractions of that act misdemeanors) before justices of the peace.

Section 2 of Act No. 110, already quoted, authorizes the seizure of all nets, etc., *found in use in violation of the law;* and section 3 of that act, without *expressly* authorizing the destruction of such articles, provides that—

"All * * * fish or nets, or fishing appliances or apparatus, seized by the said game and fish warden, shall be disposed of in such manner as may be directed by the court before whom the offense is tried, or by any court of competent jurisdiction. Said game and fish warden shall not be liable for damages on account of any search, examination, or seizure, or the destruction of any nets or fishing apparatus of any kind, *in accordance with the provisions of this act.*"

It is clear that this act permits the seizure of nets and apparatus, but only when the same are found in actual and unlawful use. It is also plain that the warden has no right to destroy the same until ordered by the court before whom the ".offense is tried," and by this we understand is meant the court before whom the person offending is tried for the unlawful use for which the apparatus is seized; and it is implied that the disposition of the property is to be determined in that proceeding, to which the offender is a necessary party, and in which he has a right to be heard. The words, "or court of competent jurisdiction," must be held to be without meaning, as there is no other court having general jurisdiction in such cases, and the law does not designate any, except as stated. The law does not declare that property found in illegal use shall be forfeited. Therefore the usual proceedings to enforce a forfeiture are not contemplated.

But it does impliedly authorize destruction of such property, within the discretion of the justice who tries the offender. This manifestly requires a judicial determination by him of the illegal use, and a discretion as to the disposition of the property.

By such a construction effect can be given to these provisions of the law. *Are they constitutional?* The summary seizure and destruction of property designed and used for unlawful purposes, or in an unlawful manner, where authorized, depends for its validity upon the police power. It is resorted to in a variety of instances, where the public health, safety, and morals demand, and in cases where the general public interest, irrespective of class, requires it. In the language of Mr. Justice Brown in *Lawton* v. *Steele, supra:*

"The police power is universally conceded to include everything essential to the public safety, health, and morals, and to justify the destruction or abatement, by summary proceedings, of whatever may be regarded as a public nuisance. Under this power it has been held that the State may order the destruction of a house falling to decay, or otherwise endangering the lives of passers-by; the demolition of such as are in the path of a conflagration; the slaughter of diseased cattle; the destruction of decayed or unwholesome food; the prohibition of wooden buildings in cities; the regulation of railways and other means of public conveyance, and of interments in burial grounds; the restriction of objectionable trades to certain localities; the compulsory vaccination of children; the confinement of the insane, or those afflicted with contagious diseases; the restraint of vagrants, beggars, and habitual drunkards; the suppression of obscene publications and houses of ill fame; and the prohibition of gambling houses, and places where intoxicating liquors are sold."

There is no doubt of the power of the Federal or State governments to declare forfeited, and to destroy or sell, articles found in use by the owner for the perpetration of crime. There is probably no civilized country or state that does not enforce such laws. The Canadian government condemns foreign vessels unlawfully fishing in her

waters of these same Lakes; the United States government summarily seizes and destroys vessels unlawfully engaged in sealing; and the States bordering the ocean enforce rigorous measures to protect the oyster. In the State of New York a law provided that—

"Any net    *    *    *    or device for taking    *    *    * fish, or whereby they may be taken,    *    *    *    set, put, floated, had, found, or maintained in or upon any of the waters of this State, or upon the shores,    *    *    *    in violation of any existing or hereafter enacted statutes or laws for the protection of fish, is hereby declared to be and is a public nuisance, and may be abated and summarily destroyed by any person, and it shall be the duty of    *    *    *    every game constable to seize and remove, and forthwith destroy, the same."

This section was attacked, and alleged to be unconstitutional, as depriving a citizen of his property without due process of law, but the act was sustained. *Lawton* v. *Steele*, 119 N. Y. 226 (16 Am. St. Rep. 813). The case was reviewed by the Supreme Court of the United States, and the validity of the law affirmed. *Lawton* v. *Steele*, 152 U. S. 133. In both courts the important question discussed was the summary destruction of the nets without judicial warrant, and judicial intervention was held unnecessary. In the federal decision it was said:

"It is not easy to draw the line between cases where property illegally used may be destroyed summarily, and where judicial proceedings are necessary for its condemnation. If the property were of great value,—as, for instance, if it were a vessel employed for smuggling or other illegal purposes,—it would be putting a dangerous power in the hands of a custom officer to permit him to sell or destroy it as a public nuisance; and the owner would have good reason to complain of such act, as depriving him of his property without due process of law. But where the property is of trifling value, and its destruction is necessary to effect the object of a certain statute, we think it is within the power of the legislature to order its summary abatement. For instance, if the legislature should prohibit the killing of fish by explosive shells, and should order the cartridges so used to be destroyed, it would seem

like belittling the dignity of the judiciary to require such destruction to be preceded by a solemn condemnation in a court of justice. The same remark might be made of the cards, chips, and dice of a gambling room.   *   *   *   It is evident that the efficacy of this statute would be very seriously impaired by requiring every net illegally used to be carefully taken from the water, carried before a court or magistrate, notice of the seizure to be given by publication, and regular judicial proceedings to be instituted for its condemnation."

See, also, *Attorney General* v. *Jochim*, 99 Mich. 371, where the meaning of "due process of law" is discussed.

But here there is no right or claim of right to destroy (though there is to seize) without judicial authority. We do not understand that it is seriously contended that a complaint must be made and a warrant issued before one engaged in unlawful fishing can be arrested, and his nets and apparatus seized and taken before a magistrate. It is a general rule that an officer clothed with proper authority may arrest and take before a magistrate any person who is committing a misdemeanor within view of such officer; and we have no doubt of the authority of the legislature to require the seizure of apparatus while being unlawfully used, the same to be held subject to disposition by the courts. Such taking and disposition of property are not without due process of law. We need not at this time determine that in all cases all property made use of in fishing may be ordered destroyed, or that it may not. It will be time enough to consider that question when relief is asked against such order. Stress is laid upon the value of complainant's property, which is said to include steam vessels, which evidently could be used for other purposes. We cannot think that there is such danger of summary destruction under judicial sanction as to prevent a review of an order for the destruction of such property.

It is a general rule that criminal prosecutions cannot be restrained by injunction. Once have it understood that they may be, and the public would labor under additional

embarrassment to the already great obstacles to the prevention of crime.    There is no excuse, upon reason or authority, for enjoining the prosecution of the complainant for violations of the law providing for a close season. If the law were unconstitutional, it would be available by way of defense to the criminal charge, and therefore no occasion for chancery to take jurisdiction for the want of an adequate remedy at law.    See Mechem, Pub. Off. § 992, and cases cited.    It has never been found necessary or expedient that the validity and construction of criminal laws should be determined in chancery, for the guidance of courts of criminal jurisdiction.

The injunction issued restrains the relator from—

"Seizing, without due process of law, the steam tugs, nets of lawful-sized mesh, and all other paraphernalia and apparatus, employed by said John O'Neill in fishing in the waters of Lake Michigan; also, the fish taken by him from said waters; also, from in any way interfering with said John O'Neill in his business of fishing between the 31st day of October, 1897, and the 15th day of December, 1897, while said business is carried on with nets of lawful-sized mesh, by reason of any alleged violation of Act No. 151 of the Public Acts of the State of Michigan for the year 1897."

We think the learned circuit judge took an erroneous view of the acts in question, and that he had no authority to issue this injunction, upon the facts of the case.

The writ of *mandamus* will be granted.

The other Justices concurred.