MILLS v. STATE BOARD OF OSTEOPATHIC REGISTRATION AND EXAMINATION.

STATUTES—APPROVAL—OPERATION—PRACTICE OF OSTEOPATHY.
Act No. 162, Pub. Acts 1903, providing for the examination and registration of osteopathic practitioners, was approved May 28, 1903, and took effect September 17th thereafter. *Held*, that the language "at the time of the passage of this act," contained therein, referred to the date when the act took effect, and not to the date of approval.

*Mandamus* by David A. Mills to compel the State Board of Osteopathic Registration and Examination to issue a certificate entitling relator to practice osteopathy. Submitted January 5, 1904. (Calendar No. 20,319.) Writ granted January 26, 1904.

*Cavanaugh & Wedemeyer*, for relator.

*Cahill & Wood*, for respondent.

CARPENTER, J. Respondent board was created under Act No. 162 of the Public Acts of 1903. This act was approved May 28, 1903, and took effect September 17, 1903. Section 2 of said act reads:

"Any person, before engaging in the practice of osteopathy in this State, shall, upon the payment of a fee of twenty-five dollars, make application for a certificate to practice osteopathy to the Board of Osteopathic Registration and Examination, on a form prescribed. * * * If the facts thus set forth * * * shall meet the require-

ments of the board,  .* * *  then the board shall require the applicant to submit to an examination as to his qualifications.  * * *  If such an examination be passed in a manner satisfactory to the board, then the board shall issue its certificate granting him the right to practice osteopathy in the State of Michigan.  * * *  Any person engaged in the practice of osteopathy in this State at the time of the passage of this act, who holds a diploma from a regular college of osteopathy, as determined by the board, and who makes application to the State Board of Osteopathic Registration and Examination before January 1, 1904, upon the payment of a fee of five dollars, shall receive a certificate from the board without examination, which, when filed with the county clerk in the county where he resides, shall authorize the holder thereof to practice osteopathy in the State of Michigan."

At the time this act was approved, relator did not have the diploma above referred to, but he obtained such a diploma on June 25, 1903, and was, as is to be inferred from the record in this case, engaged in the practice of osteopathy in this State when the act took effect, September 17, 1903.  Respondent denied the application of relator for said certificate, on the ground that to entitle him to the same, under the proper construction of the language above quoted, he should have obtained his diploma before the act was approved.  Relator asks for a *mandamus* compelling the issuance of said certificate.  The single question involved is this:  Does the language "at the time of the passage of this act" refer to the date when the act was approved, or to the date at which it took effect?

While an act of the legislature is passed when it is approved by the governor, the decisions are uniform, so far as we can ascertain, in holding that the language "at the time of the passage of this act" means when the act takes effect.  See *Osborn* v. *Charlevoix Circuit Judge*, 114 Mich., at page 658 (72 N. W. 982); *Charless* v. *Lamberson*, 1 Iowa, at page 442 (63 Am. Dec. 457); *Patrick* v. *Perryman*, 52 Ill. App., at page 518; *State* v. *Bemis*, 45 Neb., at page 739 (64 N. W. 348); *Ex parte Lucas*, 160 Mo., at page 228 (61 S. W. 218); *Harding* v. *People*,

10 Colo., at page 392 (15 Pac. 727). In each of these cases, except *Patrick* v. *Perryman, supra,* the effect of holding that the language "at the time of the passage of this act" referred to the date the act was approved made the law take effect at an earlier time than under the constitution it could. There was presented to the court in each of these cases, therefore, the alternative of declaring that this language meant when the law took effect or that it meant nothing, and the court was therefore compelled to decide that it meant when the law took effect. To hold that the language "at the time of the passage of this act" refers to the date of the governor's approval, in the case at bar, results only in a discrimination between those who attained their qualifications to practice osteopathy before May 28th and those who attained them after that date. It must be conceded that the principle of the authorities now under consideration does not apply, if, as claimed by respondent, it is settled (see *People* v. *Phippin,* 70 Mich. 6 [37 N. W. 888]; *Dent* v. *West Virginia,* 129 U. S. 114 [9 Sup. Ct. 231]) that there is no constitutional objection to such discrimination.

It is not so easy, however, to distinguish *Patrick* v. *Perryman,* 52 Ill. App., at page 518, from the case at bar. The act under consideration in *Patrick* v. *Perryman* related to the practice of dentistry. It was approved May 30, 1881, and went into effect July 1, 1881. Laws Ill. 1881, p. 77. It "provided that every person engaged in the practice of dentistry in this State should cause his name and residence or place of business to be registered with the board of examiners within six months from the date of the passage of the act." The question was whether the six months commenced to run May 30th or July 1st. It was decided that it commenced to run the latter date, when the law took effect, the court saying:

"No dentist was bound to take notice of the law till it became operative, and the period fixed for compliance with the provisions of the law would be supposed to begin at that time. To say that it began when the law was ap-

proved would involve the absurdity of saying that the legislature allowed 4 months and 29 days  *  *  *  after the law went into effect within which to comply with its terms."

While it cannot be claimed that this decision is indistinguishable from the case at bar, we do think it an authority of some weight in favor of relator's position.

Until this act took effect as law, September 17, 1903, relator had the same right to practice osteopathy as did his professional brother whose diploma was dated prior to May 28th. Did the legislature intend that after that date he should have less right? Relator answers this question no; respondent answers it yes. Unless we can agree with respondent that the legislature did intend to make this discrimination, relator is entitled to a *mandamus*. It is difficult to reconcile such a discrimination with any sense of justice. It cannot be urged that this is a discrimination against the new practitioner in favor of the old, when it is reflected that it permits men to practice whose professional experience is 3 months and 20 days. Nor can we hold that those who commenced practice after the 28th of May did so with notice of this law.

"To do that, we must hold that it [the act] has at least the force and effect of notice during a period when the Constitution has declared it shall not take effect or be in force, and when the obvious design and intention was that it should have no force or effect whatever." *Price* v. *Hopkin*, 13 Mich., at pages 326 and 327.

"If the words of a statute, though capable of an interpretation which would work manifest injustice, can possibly, within the bounds of grammatical construction and reasonable interpretation, be otherwise construed, the court ought not to attribute to the legislature an intention to do what is clear, manifest, and gross injustice." Endl. Interp. Stat. § 258, citing opinion of Brett, M. R., in *Plumstead Board of Works* v. *Spackman*, L. R. 13 Q. B. Div. 878.

Moreover, we think there is evidence in the act itself that, by the use of the language, "any person engaged in the practice of osteopathy in this State at the time of the

passage of this act," the legislature intended to include all those who were in practice when the law took effect. The act provides two tests by which the qualifications of persons to practice osteopathy shall be determined. It may be said that one is a test to determine the qualifications of those already in practice, and the other a test to determine the qualifications of those who wish to commence practice. The first test is to be applied to "any person engaged in the practice of osteopathy in this State at the time of the passage of this act," and the other test is to be applied to "any person before engaging in the practice of osteopathy in this State." It is obvious that, if relator's qualifications are not to be determined by the latter test, they are by the former. And it is less difficult to say that relator is "a person engaged in the practice of osteopathy in this State at the time of the passage of this act" than it is to say that he can apply for a certificate under the act "before engaging in the practice of osteopathy in this State."

We conclude, therefore, that, by the words "at the time of the passage of this act," the legislature meant at the time the act takes effect. In other words, they intended by these words to convey a meaning which this court recently declared they did convey. See *Osborn v. Charlevoix Circuit Judge*, 114 Mich., at page 658 (72 N. W. 982). Nor do we think that this construction has, as claimed by respondent, "a tendency to defeat the purpose of [the act], by inviting an influx of unfit practitioners to the profession." Inasmuch as all practitioners must, like relator, prove their fitness by the production of a diploma recognized by respondent as sufficient, we cannot believe them to be unfit, or that the legislature feared that they would be.

It results from these views that relator is entitled to the *mandamus* prayed for.

The other Justices concurred.