Crew, J.
Whether the facts stated in the petition of Louisa Hanlon show her entitled to the relief therein prayed for and furnish sufficient warrant for the judgments rendered by the courts below, depends, in the present case, solely upon the constitutionality of certain provisions of Section 6968-2, Revised Statutes, as amended April 26, 1898 (93 O. L., 304). These provisions so far as they are pertinent to, or involved in, the present inquiry, are as follows:
“No person, firm or corporation shall engage in the catching of fish for profit with nets in the waters of Lake Erie and the estuaries and bays thereof within this state, without complying with the provisions of this section. Every person, firm or corporation desiring to engage in fishing as above mentioned, shall make application to the commissioners of fish and game and obtain a license or authority so to do; and for such license or authority shall pay the following fee; For each tugboat or boat propelled by steam engaged in *27 fishing with gill-net, the sum of forty dollars.; for each sail boat engaged in fishing with gill-nets, the sum of five dollars; for each pound-net, fykenet, or trap-net used in fishing, the sum of three dollars; for all other nets, or seines used in fishing, except gill-nets fished from boats which have been licensed as hereinabove provided, the sum of two dollars.”
If the foregoing provisions of Section 6968-2, requiring the payment of license fees as therein stipulated, by persons who for profit engage in the catching of fish with nets, in the waters of Lake Erie, or the estuaries and bays thereof within this state are constitutional and valid, then admittedly, the petition of Louisa Hanlon in this case was and is wholly insufficient, states no cause of action in her favor, and the demurrer thereto by the State of Ohio should have been sustained by the court of common pleas, and her petition should have been dismissed. The constitutionality of said statute is here challenged, and its validity denied by counsel for defendant in error, upon the grounds: 1. That it denies to defendant in error the equal protection of the laws. 2. That it violates the uniformity clause of Section 26 of Article II, constitution of the state of Ohio. 3. That it unjustly and unlawfully discriminates between persons engaged in the same occupation, and tends to create a monopoly. Is the statute in question, for either of the foregoing reasons, unconstitutional? The right of the state, in the exercise of its police power, to regulate and control the taking of fish in all the public waters within its jurisdiction, is a right so universally *28 recognized and so uniformly affirmed, by both text-writers and courts, that it may not now be questioned. The ownership of fish and game, so far as they are capable of ownership, until reduced to actual possession, is in the state, and their protection and preservation by the state has always been regarded and treated as within the proper domain of .its police power, and the validity of laws limiting the season within which game may be killed, and prescribing the terms and conditions upon which, and the time and manner in which fish may be taken or caught in public waters within the territorial limits of the state have been repeatedly and almost uniformly upheld by the courts. In Magner v. People, 97 Ill., 333, it is said: “The ownership being in the people of the State — the repository of the sovereign authority — and no individual having any property rights to be affected, it necessarily results that the legislature, as the representative of the people of the State, may withhold or grant to individuals the right to hunt and kill game, or qualify and restrict it, as, in the opinion of its members, will best subserve the public welfare.
“Stated in other language, to hunt and kill game, is a boon or privilege granted, either expressly or impliedly, by the sovereign authority — not a right inhering in each individual; and, consequently, nothing is taken away from the individual when he is denied the privilege, at stated seasons, of hunting and killing game. It is, perhaps, accurate to say that the ownership of the sovereign authority is in trust for all the people of the state, and hence, by implication, *29 it is the duty of the legislature to enact such laws as will best preserve the subject of the trust and secure its beneficial use, in the future, to the people of the State. But in any view, the question of individual enjoyment is one of public policy, and not of private right.”
Tiedeman, in his valuable work on State and Federal Control of Persons and Property, Vol. 2, Sec. 151, says: “Where the prohibition was limited to the killing of game and the catching of fish in the public lands and streams of the state, no possible question could arise as to the constitutionality of the regulation, for the reason that no one’s rights of property could be violated in such case. The right to hunt or fish in such case is at best only a. privilege, which the state may grant or withhold at its pleasure.” Within the principles above announced it is obvious that in the enactment of police regulations for the protection and preservation of fish and game, there is reposed in the legislature a very large discretion, and courts will not assume to interfere with the exercise of such discretion unless, in the particular case, it be made to clearly appear that the act assailed does not reasonably tend to accomplish the object for which it was passed. In the present case the section under review is one of the sections of an act entitled: “An act for the further and better protection of fish and game.” If the true purpose and object of this act is expressed in its title, as would seem apparent from a consideration of the other provisions of said section, one of which is: “All fees required to be paid hereunder shall be paid to the president of the commissioners of fish and *30 game, and by him paid into the state treasury to the credit of a fund, which is hereby appropriated, for the purpose of propagating, protecting' and preserving the fish in the waters of Lake Erie,” then, certainly, the imposition, for such purpose, of a license fee upon all persons who engage in the business of fishing with nets in the waters of Lake Erie, is a proper exercise of legislative power. And it being matter of public and common knowledge, that reasons may and do exist, for imposing terms, conditions and restrictions upon persons engaged in fishing with nets in the waters of Lake Erie, that do not apply to or exist, as to other waters of the state, such enactment would be a valid law, and not in conflict with Section 26 of Article II, of the state constitution. While it may be true, in a sense, that the right to fish is a common or general right, yet it is equally true that laws regulating the exercise of this right, must of very necessity be local rather than general in their character, and hence they may, and should be, adapted to the various needs of different localities and waters. Phelps v. Racey, 60 N. Y., 10; Bittenhaus v. Johnston et al., 92 Wis., 588; Rea et al. v. Hampton et al., 101 N. Car., 51; Geer v. Connecticut, 161 U. S., 519; Morgan v. Commonwealth, 98 Va., 812; Osborn v. Charlevoix Circuit Judge, 114 Mich., 655; Ex Parte Frits, 86 Miss., 210; Hughes v. State, 87 Md., 298; Organ v. State, 56 Ark., 267; State v. Mrozinki, 59 Minn., 465.
The contention of defendant in error, that this statute is unconstitutional because it denies to her the equal protection of the laws, and unjustly and .unlawfully discriminates between persons engaged *31 in the same occupation, would seem, in part at least, to be answered by the statute itself, the language of which is: “No person, firm or corporation shall engage in the catching of fish for profit with nets in the waters of Lake Erie * * * without complying with the provisions of this section. Every such person, firm or corporation desiring to engage in fishing as above mentioned shall make application to the commissioners of fish and game and obtain a license or authority so to do.” It will be observed that the foregoing provisions are general in character, and alike applicable to all persons who would engage in fishing in the waters of Lake Erie and the estuaries and bays thereof, in the mode or manner prescribed in said section. The prohibition of the act is not confined to any particular class, but all persons are denied the right to fish with nets for profit, except such as have previously obtained a license or authority so to do. By the provisions of said act the following license fees are required to be paid: “For each tug boat or boats propelled by steam engaged in fishing with gill-net, the sum of forty dollars; for each sail boat engaged in fishing with gill-nets, the sum of five dollars; for each pound-net, fykenet, or trap-net used in fishing, the sum of three dollars; for all other nets or seines used in fishing, except gill-nets fished from boats which have been licensed as hereinabove provided, the sum of two dollars each.” It is the contention of counsel for defendant in error, that the license fees as thus levied are unequal, unjust and oppressive, and as instancing their inequality counsel in argument *32 quotes from the opinion of Hull, J., in Yensen v. State, 7 Nisi Pruis, 18; where it is said:
“Under this act, if four hundred or five hundred gill-nets were used from a single steam boat, a license fee of forty dollars would be imposed, and if twenty gill nets were used by a man of limited means in fishing from row boats, the same license fee would be imposed; and for one hundred gill-nets fished from row boats, the man who had not the means to purchase a steam boat, would be compelled to pay two hundred dollars, while the man or company who had the means to purchase a steam boat for fishing the same number of nets would pay the fee of forty dollars. These are unequal burdens, imposed upón men engaged in the same lawful occupation, upon the same waters and in the same locality, and the act is therefore unconstitutional.” The fallacy of this argument is, that it ignores, or denies that the license fee exacted is, and may rightfully be, measured and determined by the character of boat from which gill-net fishing is to be done,. and assumes that the constitutionality of the act should be determined solely ■ from a consideration of whether or not all fishermen are able to avail themselves of its provisions. In other words, the argument would seem to be, that although under the provisions of said act, all within the same class, and employing the same agencies, are taxed alike, and no privilege is accorded one citizen that is denied another who may be within the same class or condition; yet, because all fishermen can not purchase or procure tug boats *33 propelled by steam, from which to fish with gill-nets, that the latter are therefore unlawfully discriminated against. Such conclusion, we think, by no means follows. As said by Spear, J., in Marmet v. State, 45 Ohio St., 69: “Absolute equality as to burdens, whether applied to taxes or other subjects of legislation, it is not to be expected in our laws. The wisdom of man has not yet devised a system of equalizing burdens so perfect in its application and so thorough in its enforcement as to leave no room for adverse comment or criticism.” While we may not certainly know just what considerations induced the legislature to adopt the classification it did in fixing these license fees, it is enough that for the purpose of protecting and preserving the fish in the waters of Lake Erie, its estuaries and bays, sufficient reason for such classification may, and in the judgment of the legislature did, exist. In Hayes v. Missouri, 120 U. S., 71, Mr. Justice Field says: “The Fourteenth Amendment to the Constitution of the United States does not prohibit legislation which is limited either in the objects to which it is directed, or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed. As we said in Barbier v. Connolly, speaking of the Fourteenth Amendment: 'Class legislation, discriminating against some and favoring others, is prohibited; but legislation which, in carrying out a public purpose, is limited in its application, if *34 within the sphere of its operation it affects alike all persons similarly situated,. is not within the amendment.’ 113 U. S., 27, 32.”

The judgment of the circuit court will he reversed and judgment entered for the plaintiff in error.

Sitauck, C. J., Price, Summers and Davis, JJ., concur.