H. H. SAWYER, Appellee, v. T. J. GALLAGHER, AND OTHERS, Appellants.

Intoxicating liquors: STATUTE: LIMITATION OF CONSENT: NUISANCE: INJUNCTION. Chapter 142, Acts of the Thirty-third General Assembly, provides that from and after the passage of this act no city shall grant consent to sell liquor to a greater number of persons than one to every one thousand of the population of a city, and that in a city where a greater number of persons than so provided now hold such consent the city shall not be required to withdraw a sufficient number of consents to comply with the

statute, took effect July 4, following its passage.    Prior to that
date a city granted a consent to sell liquor though it had already
given consents in excess of this statutory limit.    *Held,* that the
person to whom such consent was granted was subject to a suit
in injunction to restrain him from maintaining a liquor nuisance.

*Appeal from Woodbury District Court.—*HON. FRANK R.
GAYNOR, Judge.

THURSDAY, MARCH 9, 1911.

THE opinion states the nature of the case and the
material facts.    *Affirmed.*

*Munger, Robinson & Page, Kass Bros.* and *E. A.
Burgess,* for appellants.

*John F. Joseph,* for appellee.

WEAVER, J.—This proceeding was instituted in equity
to restrain the maintenance of an alleged liquor nuisance,
the complaint being stated in the usual form.    The answer
denies the existence and maintenance of the alleged nui-
sance, but admits defendant has been conducting a liquor
saloon on the described premises.    He further alleges that
he has been and is conducting the place in strict compli-
ance with the terms of the so-called mulct statute, and is
therefore not subject to prosecution or injunction.    Upon
the trial of the issues so joined in the trial court, the only
evidence offered by or for the parties on either side con-
sisted of a written agreement or stipulation of facts, which
we here quote in full:

Stipulation.    There has been filed in the above entitled
case a petition in equity charging the defendant, T. J.
Gallagher, with illegally selling, keeping for sale, traffick-
ing in, and disposing of intoxicating liquors in a certain
building or tenement situated on the east 25 feet of lot 9,

block 2, Floyd City addition, and addition of Sioux City, Woodbury county, Iowa, known as number 1523 Dace street. It is hereby stipulated and agreed that the said cause of action be submitted to the court for its determination upon the following stipulation of facts: It is hereby stipulated and agreed: That T. J. Gallagher is operating what is known as the Mulct Tax saloon on the premises above described, and that intoxicating liquors are kept therein for sale and sold. That said T. J. Gallagher has complied with all the provisions of the mulct law and the laws and statutes of the state of Iowa, unless the following facts are held to be a violation of that part of the law regulating the sale of intoxicating liquors commonly known as the "Moon law." That the saloon commenced operations on the 1st day of July, 1909, and the consent of the city council was granted on the 29th day of June, 1909. It is also stipulated that the so-called Moon law or bill was approved on the 15th day of April, A. D. 1909, during a regular session of the Legislature of the state of Iowa, and did not provide for taking effect by publication in a newspaper in the state. That at the time the city council granted the permit above mentioned the population of Sioux City, according to the last Iowa official register, was forty thousand nine hundred and fifty-two, and that the number of saloons in Sioux City at that time which had been previously granted permits to sell intoxicating liquors was between eighty and ninety in number. That said T. J. Gallagher was not succeeding anybody nor was a permit being transferred to him by anyone, and that the permit granted above as set out was for a new saloon at this location. It is further stipulated that if the granting of a permit in the manner and at the time stated above and at the time when there was more than one saloon to every one thousand inhabitants residing in Sioux City, Iowa, and not being a transfer of a permit previously granted, is held not to be a violation of chapter 142 of laws of the Thirty-Third General Assembly, the said acts being in addition to chapter 6 of title 12 of Code relative to intoxicating liquors, then no injunction is to be granted against the defendant T. J. Gallagher; but if the said acts are held to be a violation of the Moon law, then permanent injunction shall be granted against the defendant T. J.

Gallagher permanently restraining him from the illegal
sale of intoxicating liquors upon the premises above de-
scribed within the Fourth judicial district of the state of
Iowa, and that the plaintiff have judgment for costs, in-
cluding $25 attorney's fee, and the defendant expressly
waives issuance and service of writ of injunction, and
consents to be bound thereby in the same manner and to
the same extent as if the same was issued and served.

The court found the evidence sufficient to sustain the
allegations of the petition and entered a decree for an in-
junction as prayed.    The defendant appeals.

The controversy thus presented involves the construc-
tion and effect of chapter 142, Acts Thirty-Third General
Assembly, commonly spoken of as the "Moon law." Sec-
tion 1 of that act so far as now material reads as follows:
"From and after the passage of this act no city or town
council shall by resolution grant consent to sell intoxicating
liquors as a beverage at retail to a greater number of per-
sons than one to every one thousand of the population of
said city or town as shown by the last preceding state or
national census." Section 2 further provides that "In all
cities and towns where a greater number of persons than
are provided in section one hereof now hold resolutions
of consent to sell intoxicating liquors at retail it shall not
be mandatory under the provisions of this act for the city
or town councils to cancel or withdraw a sufficient number
of such resolutions of consent to comply with the provisions
of section one hereof and such resolutions of consent may
be renewed by city and town councils to the person or per-
sons holding the same or their assignees or grantees." This
authority is subject to certain exceptions we need not now
consider. By section 4 it is further provided that no con-
sent given by any city or town council in violation of the
act shall operate as a bar to prosecutions under the pro-
hibitory liquor law, and that nothing in the act shall be
construed to extend any consent beyond the time when it

would otherwise expire under the law of the state. Section 5. repeals all acts and parts of acts inconsistent with the terms of this chapter.

It will be seen by reference to the stipulation of facts that the consent of the city council upon the sufficiency of which the defense in this case must stand or fall was granted after the act had passed the Legislature and had been approved by the Governor and just before the 4th day of July, when it would go into effect, and that at the time the said consent was given the consents already given and in force were in excess of the limit of one to each one thousand of the population of the city. The outstanding permits or consents appear to have been about two to each one thousand of the population of the city, and this particular consent was not the renewal or extension of any other consent previously given to the defendant or to anyone else. Appellants' counsel contend, and support their position by very carefully prepared briefs, that the opening words of the statute, "From and after the passage of this act," must be read as speaking from the date when it went into effect, July 4, 1909, and not from the date when it received the vote of the Legislature and approval of the Governor, and that to make it applicable to the defendant's case is to give it a retroactive effect, for which there is no warrant in law or in the language of the act itself. That the words "now" and "hereafter" and the phrase "after the passage of this act" may, and indeed ordinarily do, have the meaning contended for, we think must be admitted. This is particularly true where the word or phrase of this nature is not by repetition given special emphasis, and there is nothing in the subject matter of the legislation or the apparent end to be attained which fairly discloses a different intent. See *Mills v. Board,* 135 Mich. 525 (98 N. W. 19); *Charless v. Lamberson,* 1 Iowa, 435; *Davenport v. Railroad Co.,* 37 Iowa, 624; *Rogers v. Vass,* 6 Iowa, 405; Cooley's Constitutional Limitations (6th

Ed.) 187; *Thompson v. District,* 102 Iowa, 94; *Bennett v. Bevard,* 6 Iowa, 82.

But, like most general propositions in law, this rule is not applicable with absolute universality. For instance, it has been held that in a statute providing that "after the passage of this act arrest or imprisonment for the recovery of debt . . . is hereby abolished," such arrest and imprisonment were abolished from and after March 31, the day when the act was passed by the Legislature, although it did not go into effect until July 1. *Eliot v. Cranston,* 10 R. I. 88. In *United States v. Williams,* 28 Fed. Cas. 677, the passage of an act was held to be the time when it received the votes of Congress, and not the day when it was approved by the President. A like rule was observed in *State v. Mounts,* 36 W. Va. 179 (14 S. E. 407, 15 L. R. A. 243). In *Johnson v. Fay,* 16 Gray, 144, it was held that where certain rights which accrued "prior to the passage" of a law were excepted from its operation, the exception did not include rights which accrued after the act was signed by the Governor, and before it took effect. In *Kendig v. Knight,* 60 Iowa, 29, this court had to consider the effect of an ordinance which provided that "at any time hereafter" the council may by resolution order the guttering of streets. The ordinance was passed by the council August 7, and did not go into effect till five days after its publication, which took place August 12. On August 9, three days before the publication of the ordinance and eight days before it went into effect, the council adopted a resolution to gutter a certain named street; the work being done after the ordinance went into effect. The validity of the proceedings was contested on the theory that "hereafter" as used in the ordinance must be held to mean after the date when the ordinance became effective, and not the date when it received the legislative sanction of the council. In support of this contention, the rule and many of the precedents relied

upon by the appellant in this case were cited, but the court speaking by Seevers, J., said: "We do not think these cases have much bearing on the question before the court, because the word 'hereafter' may mean either period, and the object, intent, and purpose in view must be considered in determining which. . . . The ordinance was, in fact, passed by the council before the resolutions were adopted, and we see no reason for holding that the word 'hereafter' in the former should be construed to mean after, by its terms, the ordinance took effect." It would therefore seem that there is no invariable or cast-iron rule by which the words now under consideration are to be always and under all circumstances given the same significance, and that in seeking their true interpretation or construction the subject matter of the enactment and the evil, if any, sought to be corrected and the object sought to be attained, are to be given due consideration.

We are of the opinion, however, that the statute now before us does not present a case in which the soundness or unsoundness of the proposition just stated is a matter of serious import. Counsel's contention that the constitutional provision for making all enactments, not containing an emergency clause, go into effect the 4th day of July following their passage, can not be evaded by a construction which shall make them relate back, and operate as if in fact such emergency clause had been attached, may be conceded. We may also agree that a statute will not be given a retroactive effect unless the language of the act itself or the evident purpose to be thereby effected clearly justify it. But we are persuaded that to sustain the decree of the trial court, it is not necessary to violate this constitutional regulation or to give the statute retroactive operation in any proper sense of the word.

It is settled beyond all question that the right to deal in intoxicating liquors is not one which can not be constitutionally denied. It is a business which may be ab-

solutely prohibited, licensed, regulated, or made subject to any condition which the legislative power sees fit to impose. It was therefore perfectly competent for the General Assembly to provide that from and after July 4, 1909, the number of licenses, permits, or consents should not exceed the ratio of one to each one thousand of the population of each city or town. It was equally within the legislative power to provide that where the existing number of licenses, permits, or consents already exceeded the limits thus prescribed, the city council need not, except upon its own initiative or discretion, cancel or withdraw the excess. In determining or defining the period or point of time at which the excess permits thus favored or reserved from the operation of the act should be ascertained, the Legislature could rightfully fix any date, either July 4, when the act became effective, or any prior date. Had the Legislature in framing this section of the act provided in so many words that "in all cities and towns where on the date this act takes effect a greater number of persons than are provided in section 1 hereof hold resolutions of consent which were in force on or before April 15, 1909, it shall not be mandatory upon the city or town councils to withdraw or cancel such consents in excess of the limit hereinbefore provided" could it be argued that the constitutional provision which makes the act go into effect on July 4, 1909, was thereby violated or evaded, or that the naming of April 15, 1909, as the date beyond which the exemption should not apply, was objectionable or inoperative because of its retroactive character? We feel quite sure that counsel would not seriously urge the affirmative of either proposition. But this we think is precisely what the statute does provide. The bill before the General Assembly was proposing to limit the ratio of liquor saloons to the population of the cities and towns where they were permitted to exist. It was further proposed to so temper the effect of this limitation that where,

under protection of the law as it then existed, resolutions of consent in excess of the limit were outstanding, it should not be obligatory upon city or town councils to withdraw or cancel them.   It was perfectly evident, however, that if the law was not to go into effect until July 4, and there was no restriction upon the operation of this exception as to the time when the resolutions of consent thus to be preserved were granted, the result would be that immediately upon the passage of the act and its approval by the Governor there would be a general and insistent rush on the part of dealers to procure consents, the number of saloons would be increased, instead of diminished, and the manifest purpose of the law defeated.   The bill had, at least the nominal purpose .of reducing or limiting the increase of saloons, and to say that the men who framed it and made it a law intended to provide an open season from April 15 to July 4 during which the number of saloon consents could be increased indefinitely and without limit would be to impeach their honesty or intelligence. Considering, therefore, the subject matter of the statute, the evil sought to be remedied, and the ordinary and usual significance of the language employed, the words "from and after the passage of this act" as used in section 1 of the statute and the words "now hold" as used in section 2 thereof are to be given effect as making the passage of the act by the Legislature, to wit, April 15, 1909, the date beyond which the exception or exemption provided for in. section 2 should not be effective.

This conclusion is not necessarily inconsistent with any of the numerous authorities cited by counsel.   Even the case of *State v. Williams,* 173 Ind. 414 (90 N. E. 754), decided by the Indiana court, which is relied upon by the appellant and in some respects most nearly upholds his contention, recognizes the rule which we here apply. It says:   "We do not mean to be understood as holding or intimating that the Legislature had not the power in

this character of legislation . (which was a local option statute) to fix the date of the approval of the act or any other definite time as the time from which to reckon in discriminating between .persons, or to fix their status, for it does not affect a vested or property right, and is a matter of purely legislative grace which may be extended or denied, but, in the absence of the statute fixing definitely the time or date when the reckoning shall begin, even though it be a matter of grace, it should not be left open to implication or construction." We do not here rely upon mere implication or doubtful construction.   The language of the statute when given effect according to express terms sufficiently indicates the legislative purpose to make the passage of the act the date "from which to reckon" for the ·purpose of applying the discrimination for which the act provides.

The decree entered by the trial court is right, and it is *affirmed*.