[L. A. No. 2609.  In Bank.—September 26, 1911.]

## F. H. SOLOMON, Appellant v. GEORGE ALEXANDER, Mayor of the City of Los Angeles et al., Respondents.

LOS ANGELES CHARTER—TIME FOR FILING REFERENDUM PETITION—FINAL PASSAGE OF ORDINANCE—TIME OF PUBLICATION.—Under section 198b of the charter of the city of Los Angeles, providing that no ordinance "shall go into effect before thirty days from the time of its final passage and its approval by the mayor," and authorizing a referendum petition against such ordinance to be filed within such thirty days, and section 39 of the charter, providing that all ordinances "finally adopted" shall be published by at least one insertion in a daily newspaper and until such publication "no ordinance shall be valid or take effect," the thirty-day period within which the referendum petition must be filed commences to run from the time of the approval of the ordinance by the mayor, and not from the date of its publication.

ID.—WHEN ORDINANCE IS FINALLY PASSED.—The expression "final passage" of the ordinance, as used in section 198b of the charter, has reference only to favorable legislative consideration of the ordinance by the city council, as distinct from the going into effect of the ordinance after such action and by publication.  The expression "finally adopted," as used in section 39, and the expression "final passage," as used in section 198b, are synonymous.

APPEAL from a judgment of the Superior Court of Los Angeles County.  George H. Hutton, Judge.

The facts are stated in the opinion of the court.

Haas, Garrett & Dunnigan, for Appellant.

Leslie R. Hewitt, City Attorney, and John W. Shenk, City Attorney, for Respondents.

LORIGAN, J.—This appeal involves a construction of the "referendum" provision of the city charter of the city of Los Angeles.

Section 39 of the charter provides that "all ordinances finally adopted under the provisions of this charter shall be published . . . by at least one insertion in some daily newspaper printed and published in the city of Los Angeles and until and without such publication . . . no ordinance shall be valid

or take effect." Section 198b provides that no ordinance passed by the city council (except emergency and street improvement ordinances) "shall go into effect before thirty days from the time of its final passage and its approval by the mayor; and if during said thirty days a petition signed by electors of the city equal in number (to a certain percentage of the vote cast at the last preceding election for certain officers) protesting against the passage of such ordinance be presented to the council the same shall thereupon be suspended from going into operation and it shall be the duty of the council to reconsider such ordinance and if the same is not entirely repealed the council shall submit the ordinance as provided in section 198a of this charter to the vote of the electors of said city either at the next general election or at a special election to be called for that purpose. . . ."

On October 5, 1909, the city council of the city of Los Angeles adopted an ordinance entitled "An ordinance regulating dance halls and providing for the granting and revocation of permits therefor," which ordinance was approved by the mayor of the city on October 16, 1909, and was published in the Los Angeles *Daily Journal* on October 19, 1909.

On November 16, 1909, pursuant to said section 198b and in an attempt to comply with its provision a referendum petition was filed with the city clerk, but notwithstanding its filing the city council disregarded it and refused to take any action upon it on the ground that it had not been filed within the time provided in said section 198b of the charter.

Plaintiff, the proprietor of a public dance hall in the city of Los Angeles, alleging that the mayor and city council and chief of police maintained that the filing of said petition did not suspend the operation of said ordinance and were proceeding to enforce it to his irreparable injury, brought this action to enjoin the enforcement of said ordinance.

A general demurrer to his complaint was sustained and plaintiff declining to amend judgment was entered against him from which this appeal is taken.

The only point involved on this appeal is when does the thirty day period within which the referendum petition must be filed commence to run. Does it begin to run from the time of the approval of the ordinance by the mayor or from the date of the publication of the ordinance?

In the present case if it commenced to run from the date of the approval by the mayor it is conceded by the appellant that the referendum petition was filed too late by a day.

If, on the other hand, the time within which to file the petition ran from the publication of the ordinance the petition was filed in ample time and it was the duty of the council to have acted with reference to it as section 198b of the charter provides.

The position of the appellant is that by the use of the term "its final passage and approval by the mayor" in the referendum clause is meant the publication of the ordinance because section 39 of the charter provides that "an ordinance shall not be effective until its publication"; that "final passage" means the "taking effect" of the ordinance by publication.

We cannot agree with this claim. On the contrary, the publication of the ordinance has nothing to do with fixing the time when the right to file a referendum petition commences to run. Publication of the ordinance could not at any time prior to the thirty days from the final passage and approval of the ordinance by the mayor put the ordinance in force. The ordinance, it is true, could not become effective until after such publication, but such publication, if made at any time prior to thirty days after its final passage and approval, would only put the ordinance in a position of being capable of enforcement after the expiration of thirty days allowed for filing the referendum petition, because the referendum clause declares that the ordinance shall not go into effect until then. It could only go into effect thirty days after the final passage and approval, and then only if publication was made. If the referendum petition is filed within the thirty days, then the ordinance, as the referendum section further provides, is suspended from going into operation. This is true whether the ordinance has been published or not.

The stress of the argument of appellant is addressed to the use of the word "final" as it is employed in the referendum provision "final passage and approval by the mayor of the ordinance." He insists that "final passage" includes putting the ordinance into effect by publication. But a construction of the charter provisions satisfies us that "final passage" of an ordinance as used in the referendum clause means some-

thing quite different from the taking effect of the ordinance by its publication.

Under the charter of Los Angeles legislative power is vested in the city council to be exercised by ordinance and subject to the power of approval or veto by the mayor, with further power in the city council to pass an ordinance over the veto of the mayor. When an ordinance receives the requisite favorable action of the city council and the approval of the mayor it is "finally passed," and if it is returned by the mayor with his veto and is passed thereover, it is equally "finally passed," though to this latter situation the term "finally passed." has more exact application. But whether favorably acted on by the council and approved by the mayor, or favorably acted on over the veto of the mayor, such "final passage" has reference only to favorable legislative consideration of the ordinance by the council as distinct from the going into effect of the ordinance after such action and by publication.

Section 39 of the charter, which provides that all ordinances "finally adopted" shall be published, and until publication shall not take effect, is found among the provisions of the original charter of the city adopted in 1889. The referendum section, suspending ordinances from going into effect before thirty days from the time of "final passage and approval" was inserted in the charter by amendment in 1903.

It will be observed that in section 39 ordinances "finally adopted" are then to be made effective by publication. This, of course, means final legislative action in passing an ordinance, as distinct from putting it into effect by publication, and this section recognizes them as entirely different things. There is no distinction in meaning between the phrase "finally adopted" as used in section 39 and "finally passed" as found in the referendum clause: they are synonymous, and as "finally adopted" in section 39 does not mean taking effect of the ordinance by publication, but only favorable action by the council itself, so equally "finally passed" in the referendum clause does not mean taking effect by publication, but solely favorable action by the council on the ordinance.

Now while we have considered more particularly the meaning of the phrase "finally passed," because under the charter this term would be applicable to final favorable action by

the council in passing an ordinance, whether it received the approval of the mayor, or is passed over his veto, it is to be observed that by the referendum clause during thirty days from the time of its "final passage and approval by the mayor" the ordinance shall not go into effect, and if during said thirty days a petition protesting against the passage of said ordinance be presented to the council it shall be suspended from going into operation. When the charter clause speaks of the "approval by the mayor" in connection with "final passage," there can be no doubt but that simply the legislative enactment of the ordinance is meant, as a period from which the thirty days to file a protesting petition shall begin.

This is the obvious meaning to be given to the section. The purpose was to afford the electors of the city a reasonable opportunity to protest against legislation which they deemed objectionable, and to provide for the filing of such protest before the ordinance became effectual. In such a scheme one of the essential things to be provided for was to fix a definite time within which such protest could be presented. To say that such time was intended to be from the publication of the ordinance provides no certainty as to time, because the charter does not provide when an ordinance shall be published after its passage and approval. On the other hand, after an ordinance is passed by the council, those interested in objecting to the ordinance know that the mayor has but ten days after its presentation to him to act upon it. They can thus readily ascertain whether his action is favorable or adverse, and the result of the action of the council, if it is the latter, and govern themselves accordingly. There is a degree of certainty as to time by making the period for protesting run from the final passage, if passed over the veto of the mayor, or its final passage and approval if he approves it, which could not be afforded if the time was to run from the indefinite and uncertain period when the ordinance might be published.

Counsel for appellant cite us to a number of cases where it was held that the term "after the passage of the act," "at the time of the passage of the act" or "prior to the time of the passage of the act" meant the time the act took effect. (*Harding* v. *People,* 10 Colo. 387, [15 Pac. 727]; *State ex rel, Churchhill* v. *Bemis,* 45 Neb. 724, [64 N. W. 348]; *Mills* v. *State Board etc.,* 135 Mich. 525, [98 N. W. 19].) But in

these cases it was uncertain and doubtful when the act in question took effect; no time was specified, nor any definite language from which that fact could be ascertained. Under such circumstances it is only a reasonable construction to hold that the passage of the act meant when it took effect. But in the referendum clause here the term "final passage" of the ordinance is not used alone as was the term "passage of the act" in the cases cited. It is used in connection with the approval of the mayor. Effect must be given to this language, and no other effect can be given than that the time when legislative action was complete and approved of is the date from which the right to file a referendum petition commences to run.

In this view the referendum petition here in question was filed too late, and the trial court properly sustained the demurrer to the complaint.

The judgment appealed from is affirmed.

Shaw, J., Angellotti, J., Sloss, J., Melvin, J., and Henshaw, J., concurred.

BEATTY, C. J., concurring—I concur. The numerous decisions cited by counsel for appellant holding that such expressions as "the final passage" (of legislative acts) refer to the date (subsequent to their approval by the executive) when, by their terms, or by constitutional provision, they first became operative, were made in cases involving the question whether the rights or duties of individuals or public officers were changed or affected by the act before the time it was to take effect. As to this question it was necessarily held that "final passage" and similar expressions referred to the date when the act first became operative. It could not have been held otherwise without defeating the manifest policy of a constitutional or statutory provision suspending the obligation of a new rule of conduct until its terms can be made known and the affairs of those affected by it adjusted to the changed conditions. No such principle of construction applies to the referendum provisions of the charter of Los Angeles, the avowed intention of which is to prevent an ordinance against which a sufficient protest is filed from ever taking effect unless ratified by a popular vote. This case furnishes an illustra-

tion of how an ordinance could under appellant's construction of the charter become and be operative for one day notwithstanding the opposition of a sufficient percentage of protestants, and cases can easily be supposed in which, upon the same construction, objectionable ordinances might become operative and remain so for weeks, and then be suspended by protest and finally defeated by popular vote. It is easy to see how much inconvenience and confusion this might involve.