PEOPLE *v.* LITVIN.

1. CONSTITUTIONAL LAW—SOVEREIGN POWER OF THE STATE.
   The sovereign power of the State includes protection of the safety, health, morals, prosperity, comfort, convenience and welfare of the public, or any substantial part of the public.

2. SAME—POLICE POWER—REGULATION OF BUSINESS.
   Since all businesses and occupations are conducted subject to the exercise of the police power, generally legislation is valid which has for its object the promotion of the public health, safety, morals, convenience and general welfare or the prevention of fraud and immorality; individual freedom yielding to regulations for the public good.

3. SAME—RESTRAINTS MUST BE REASONABLE AND NECESSARY FOR PUBLIC GOOD.

The constitutional guaranty of life, liberty and of property is subject to such restraints as are reasonably necessary for the public good, and an individual citizen of organized society has no right to do those things which are injurious to the common welfare.

4. SAME—POLICE POWER.

The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order, and morals of the community.

5. MUNICIPAL CORPORATIONS—REGULATION OF TRADES, OCCUPATIONS AND BUSINESS ACTIVITIES.

The regulation of trades, occupations and business activities is a proper question for the legislative power of a home rule city (1 Comp. Laws 1929, §§ 2239, 2240, as amended by Act No. 283, Pub. Acts 1941; Detroit Charter, title 3, chap. 1, § 12).

6. SAME—ORDINANCES—PARKING LOTS—VENDORS—POLICE POWER.

Ordinance prohibiting licensed parking-lot operators from subletting or permitting the use of any portion of premises by vendors of merchandise or services unless the same be conducted in a permanent structure was not an improper use of police power vested in a home rule city (1 Comp. Laws 1929, §§ 2239, 2240, as amended by Act No. 283, Pub. Acts 1941; Detroit Charter, title 3, chap. 1, § 12; Detroit Comp. Ord. 1936, chap. 74, § 15 [c]).

7. SAME—ORDINANCES—PARKING LOTS—VENDORS—USED-CAR LOTS—REGULATION.

Ordinance prohibiting licensed parking-lot operators from subletting or permitting the use of any portion of premises by vendors of merchandise or services unless the same be conducted in a permanent structure without imposing a like restriction upon operators of used-car lots was not unconstitutional as arbitrary and unreasonable since the operator of a used-car lot usually owns or controls the cars thereon while on parking lots the cars are usually left unlocked and moved frequently and such lots, therefore, have greater need of regulation (Detroit Comp. Ord. 1936, chap. 74, § 15 [c]).

8. CONSTITUTIONAL LAW—BURDEN OF SHOWING ARBITRARINESS.

Burden of showing that classification in an ordinance is essentially arbitrary rests upon party assailing it.

9. SAME—PRESUMPTION OF VALID CLASSIFICATION—BURDEN OF PROOF.

When the classification made by a legislative body is called in question, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of the existence of that state of facts and the party assailing the classification then has the burden of showing by a resort to common knowledge, judicial notice, or other legitimate proof that the legislation is arbitrary.

10. MUNICIPAL CORPORATIONS—ORDINANCES—PARKING LOTS—VENDORS—PUBLIC WELFARE.

Ordinance prohibiting licensed parking-lot operators from subletting or permitting the use of any portion of premises by vendors of merchandise or services unless the same be conducted in a permanent structure and making various other requirements of licensee was enacted for the public welfare and a reasonable relationship existed between the regulation provided in the ordinance and the evil sought to be remedied (Detroit Comp. Ord. 1936, chap. 74, § 15 [c]).

Appeal from Wayne; Jayne (Ira W.), J. Submitted April 12, 1945. (Docket No. 71, Calendar No. 42,806.) Decided June 29, 1945.

Herman Litvin was convicted in recorder's court for the city of Detroit of violating an ordinance. Defendant removed cause to circuit court by certiorari. Judgment reversed. Plaintiff appeals. Reversed and remanded for execution of sentence.

*William J. Dowling,* Corporation Counsel, and *Nathaniel H. Goldstick,* Assistant Corporation Counsel, for people.

*Donald B. Frederick,* for defendant.

SHARPE, J. Defendant, Herman Litvin, was tried and convicted in the recorder's court for the city of Detroit for violation of Detroit compiled ordinances, 1936, chap. 74, § 15 (c), which reads as follows:

"No licensee shall sublet, sublease or otherwise permit.any parking lot or any portion thereof to be used by any vendor of goods, wares or merchandise or services for the conduct of such vendor's business unless the same is conducted in a permanent building or structure."

Defendant was a licensed parking-lot operator whose lot was located at the corner of Randolph street and Monroe avenue in Detroit. He permitted a portion of his parking lot to be used by hawkers, vendors, and pitchmen. After conviction, defendant removed the cause to the circuit court of Wayne county by certiorari, alleging that the ordinance was invalid and unconstitutional.

The judge of the recorder's court filed a return in which it was stated:

"That the testimony showed that the automobiles of patrons parked on the parking lot were generally left unlocked, with the keys in the car, and that such peddlers, vendors and merchants and prospective customers had ready and easy access to such cars.

"Testimony further showed that there was no barrier or fence between the portion of the parking lot made use of by the peddlers and vendors and that portion of the lot made use of for the parking of cars.

"Testimony further showed that the peddlers attracted all kinds and types of people, creating a serious police problem by crowding the parking lot and the sidewalk adjacent to the parking lot, thus seriously impeding pedestrian traffic.

"Testimony further showed that for the year 1943, 626 automobiles were stolen from parking lots in the city of Detroit, and that on October 8, 1943, an Olds coupe, bearing license JG 9069, was stolen from the parking lot operated by the defendant Litvin, at the foregoing location, Monroe and Randolph.

"Testimony further showed that many complaints have been made to the police department by reason of the theft of personal property from automobiles and that parking lot operators disavow any liability for the theft of personal property from parked automobiles.

"Testimony further showed that large crowds congregated in this parking lot which made it easy for pickpockets to ply their trade, thus causing a serious police problem.

"Testimony further showed that the ordinances prohibiting the use of parking lots for the sale of merchandise by peddlers and vendors was passed in order to prevent unauthorized persons from easy access to parking lots, in order to prevent congestion on sidewalks, thus impeding pedestrian traffic; to prevent pickpockets from plying their trade among crowds, and in order to enable parking lot operators to better control and operate their parking lots, and that the ordinance was necessary for the proper regulation and operation of parking lots."

The trial court filed an opinion in which he said:

"The ordinance here undertakes to prohibit recognized legitimate businesses on private property and I don't think that this is in the power of the common council."

Subsequently, an order was entered reversing the judgment of conviction in the recorder's court and discharging the defendant.

Plaintiff, upon leave being granted, appeals and urges that the enactment of Detroit compiled ordinances, 1936, chap. 74, § 15 (c), constitutes a reasonable and proper exercise of the police power of the municipality and does not violate section 1 of the Fourteenth amendment to the Federal Constitution or article 2, § 16, of the State Constitution; that the

above section of the ordinance does not constitute an unreasonable and arbitrary classification; and that the finding of unreasonableness by the trial court is not justified by the record.

Defendant urges that the particular section of the ordinance in question here is unconstitutional as it imposes an unreasonable regulation upon a lawful private business under the guise of the general police powers.

The city of Detroit is a home rule city. In *People* v. *Sell,* 310 Mich. 305, we said:

"The home rule city act (Act No. 279, §§ 4-i, 4-j, Pub. Acts 1909, as added by Act No. 126, Pub. Acts 1929, and as amended by Act No. 283, Pub. Acts 1941 [Comp. Laws Supp. 1943, § 2239, 1 Comp. Laws 1929, § 2240, Stat. Ann. 1944 Cum. Supp. § 5.2082, Stat. Ann. § 5.2083]) provides in part:

" 'Sec. 4-i. Each city may in its charter provide:
\* \* \*

" '(4) For the regulation of trades, occupations and amusements within its boundaries, not inconsistent with State and Federal laws, and for the prohibition of such trades, occupations and amusements as are detrimental to the health, morals or welfare of its inhabitants.'

" 'Sec. 4-j. Each city may in its charter provide:
\* \* \*

" '(3) For the exercise of all municipal powers in the management and control of municipal property and in the administration of the municipal government, whether such powers be expressly enumerated or not; for any act to advance the interests of the city, the good government and prosperity of the municipality and its inhabitants and through its regularly constituted authority to pass all laws and ordinances relating to its municipal concerns subject to the Constitution and general laws of this State.' "

Title 3, chap. 1, § 12, of the charter of the city of Detroit, as amended, provides:

"The legislative powers and duties of the council shall be as follows:    *    *    *

"(d)    To enact ordinances to carry into effect the powers conferred and the duties imposed upon the city by the Constitution and laws of the State, to make operative the provisions of this charter, and to promote the general peace, health, safety, welfare, and good government of the city; and to provide for the enforcement of such ordinances and the punishment of violations thereof.    *    *    *

"(n)    To provide for the regulation of trades, occupations and amusements and to provide for the prohibition of such trades, occupations and amusements as are detrimental to the health, morals or welfare of its inhabitants, and for the regulation and restriction of the territory within which intoxicating liquors are sold or manufactured, if not prohibited by law: Provided, that the council shall by ordinance provide for the regulating, licensing and bonding of private detectives and private detective agencies."

In *Cady* v. *City of Detroit,* 289 Mich. 499, 504, we said:

"The sovereign power of the State includes protection of the safety, health, morals, prosperity, comfort, convenience and welfare of the public, or any substantial part of the public. *Schmidinger* v. *City of Chicago,* 226 U. S. 578 (33 Sup. Ct. 182, 57 L. Ed. 364, Ann. Cas. 1914 B, 284); *Bacon* v. *Walker,* 204 U. S. 311 (27 Sup. Ct. 289, 51 L. Ed. 499); *Nebbia* v. *People of State of New York,* 291 U. S. 502 (54 Sup. Ct. 505, 78 L. Ed. 940, 89 A. L. R. 1469); *Barbier* v. *Connolly,* 113 U. S. 27 (5 Sup. Ct. 357, 28 L. Ed. 923); *Lake Shore & M. S. Railway* v. *Ohio,* 173 U. S. 285 (19 Sup. Ct. 465, 43 L. Ed. 702); *Chicago, B. & Q. Railway* v. *People of the State of Illi-*

*nois, ex rel. Drainage Comm'rs,* 200 U. S. 561 (26 Sup. Ct. 341, 50 L. Ed. 596, 4 Ann. Cas. 1175).''

In *People of the State of New York, ex rel. Armstrong,* v. *Warden of the City Prison of the City of New York,* 183 N. Y. 223 (76 N. E. 11, 2 L. R. A. [N. S.] 859, 5 Ann. Cas. 325), the court said:

''All business and occupations are conducted subject to the exercise of the police power. Individual freedom must yield to regulations for the public good. It may be laid down as a general principle that legislation is valid which has for its object the promotion of the public health, safety, morals, convenience and general welfare or the prevention of fraud or immorality.''

In *Parkes* v. *Judge of Recorder's Court,* 236 Mich. 460 (47 A. L. R. 1128), we said:

''The constitutional guaranty of life, liberty and of property is subject to such restraints as are reasonably necessary for the public good. As a member of organized society the individual citizen has no right to do those things which are injurious to the common welfare.''

In *Kelley* v. *Judge of Recorder's Court of Detroit,* 239 Mich. 204, 214 (53 A. L. R. 273), we quoted with approval from *Crowley* v. *Christensen,* 137 U. S. 86 (11 Sup. Ct. 13, 34 L. Ed. 620) :

''The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community.''

In our opinion the regulation of trades, occupations and business activities is a proper question for the legislative power of the city. We do not find any improper use of this power in enacting that portion of the ordinance in question. However, it

is urged that the ordinance is invalid because of unreasonable and invalid classification, in that the ordinance permits vendors to operate on the parking lots if the business is conducted in a permanent building, while no such restriction is cast upon operators of used-car lots.

In *Cook Coffee Co.* v. *Village of Flushing,* 267 Mich. 131, we said:

"One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

In our opinion there is a material difference between parking lots and used-car lots. In used-car lots, the operator usually owns or controls the cars parked therein. In parking lots, such as the one involved in this case, the cars are usually left unlocked and moved frequently. Because of different conditions there is a greater need of regulating parking lots than used-car lots. The ordinance applies to all operators of parking lots. The ordinance has a relation to the evil growing out of the uses made of parking lots.

In *Bordens Farm Products Co., Inc.,* v. *Baldwin,* 293 U. S. 194, 209 (55 Sup. Ct. 187, 79 L. Ed. 281), it was said:

"When the classification made by the legislature is called in question, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of the existence of that state of facts, and one who assails the classification must carry the burden of showing by a resort to common knowledge or other matters which may be judicially noticed, or to other legitimate proof, that the action is arbitrary. *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61 (31 Sup. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912 C, 160); *Ohio, ex rel. Clarke,* v. *Decke-*

*bach,* 274 U. S. 392, 397 (47 Sup. Ct. 630, 71 L. Ed. 1115); *Lawrence* v. *State Tax Commission of Mississippi,* 286 U. S. 276, 283 (52 Sup. Ct. 556, 76 L. Ed. 1102, 87 A. L. R. 374).''

Defendant relies upon *S. S. Kresge Co.* v. *Mayor of City of Detroit,* 290 Mich. 185 (124 A. L. R. 543), as authority for the claim that the ordinance is unreasonable. We there said:

''The object of the present ordinance was not to protect the citizens of Detroit in their public health, safety, morals or general welfare, but was for the financial benefit of a few. In view of the fact that the selling of flowers and potted plants is a legitimate business, and that there has been no showing made of the existence of any evil in connection with the sale of flowers and potted plants, we are constrained to hold that the ordinance involves the infringement of the right of property or business under the guise of police regulations and is therefore void.''

It is to be noted from the language above quoted that the object of the ordinance in the *Kresge Case* was ''the financial benefit of a few,'' while in the case at bar the object is to gain better police protection to motorists who park their cars in such parking lots and to alleviate the problem of pedestrian traffic in such locations.

In coming to a decision in this cause, we have in mind that the ordinance under discussion also provides that anyone conducting a parking station shall obtain a license for the same; that a license fee must be paid therefor; that the person obtaining such license must have a good character; that each person employed in the parking station must also be licensed; that each station shall be equipped with proper fire-extinguishing apparatus; that the parking station shall be enclosed with a suitable fence with one common entrance and one common exit,

which may or may not be combined; and that such station shall be kept free from dust. We recognize the necessity of parking lots in cities the size of Detroit as well as the duty of the city to properly regulate the same. In our opinion the record sustains a finding that the legislation was for the public welfare. The return of the recorder's court establishes that a reasonable relationship exists between the regulation provided in the ordinance complained of and the evil sought to be remedied.

The order of the court setting aside the conviction is reversed and the cause remanded to the circuit court for certification to the recorder's court for execution of sentence.

STARR, C. J., and NORTH, WIEST, BUTZEL, BUSH-NELL, BOYLES, and REID, JJ., concurred.