### PEOPLE *v.* ZIMBERG.

#### SAME *v.* GENOFF.

1. FISH—PROPERTY OF STATE—REGULATION.
   Wild game and fish belong to the State and are subject to its power to regulate and control.

2. SAME—LIMITED PROPERTY INTEREST ACQUIRED BY INDIVIDUALS.
   An individual may acquire only such limited or qualified property interest in wild game or fish as the State chooses to permit.

3. SAME—CONSERVATION LEGISLATION—POLICE POWER.
   Conservation legislation respecting wild game or fish is clearly an exercise of the police power inherent in the State.

---

REFERENCES FOR POINTS IN HEADNOTES
[1-4] 22 Am. Jur., Fish and Fisheries, § 2.
[3] Construction and application of statute or ordinance making possession of carcass of game, fish, or bird, or parts thereof, a criminal offense.  125 A.L.R. 1200.
[4] 12 Am. Jur., Constitutional Law, § 484n; 22 Am. Jur., Fish and Fisheries, §§ 34, 50.
[5-9] 22 Am. Jur., Fish and Fisheries, § 34.
[10] 12 Am. Jur., Constitutional Law, §§ 469, 470.
[11] 12 Am. Jur., Constitutional Law, §§ 485, 521.
[12] 12 Am. Jur., Constitutional Law, § 521.

4. SAME—REGULATION OF TRAFFIC IN FISH AFTER THE TAKING.

Since the wild game or fish within a State belong to the people in their collective sovereign capacity, it is not the subject of private ownership except in so far as the people may elect to make it so and they may, subject to constitutional restrictions, absolutely prohibit the taking or killing thereof, or the traffic and commerce in it even after it is taken or killed, if it is deemed necessary for the protection or preservation of the public good.

5. CONSTITUTIONAL LAW—LIMITATION UPON RIGHT OF PROPERTY IN FISH.

The imposition of limitations upon the right of property in fish after it has been reduced to possession deprives no person of his property because, prior to its taking, he had no previous right of property in it.

6. SAME—PRIVILEGES AND IMMUNITIES—RIGHT TO FISH.

The privileges and immunities guaranteed to citizens of the United States by the Constitution of the United States do not include the right to fish in the waters of a State (U. S. Const. am. 14).

7. SAME—RIGHT TO FISH—RIGHTS OF CITIZENS OF THE UNITED STATES.

The citizens of a State may not assert the right to fish in the waters of their State unless that right is one guaranteed to every citizen of the United States (U. S. Const. am. 14).

8. SAME—DUE PROCESS—LIMITED RIGHT TO SELL FISH.

With ownership of wild game and fish reposing in the State, and individuals enjoying only such limited ownership as the State may grant, the State's refusal to grant unqualified ownership with all the incidents of ownership, such as the right of sale, is not the taking of property without due process of law (U. S. Const. am. 14).

9. SAME—DUE PROCESS—EQUAL PROTECTION—STATUTES—SIZE AND PLACE OF SALE OF FISH.

Statute permitting the taking of pike-perch 13 to 15½ inches long in Lake Erie and the sale thereof at the docks along that lake but prohibiting their sale elsewhere in the State is not a taking of property without due process nor a denial of equal protection since all persons can enjoy the limited right equally (U. S. Const. am. 14; 2 Comp. Laws 1929, § 6320, as amended by Act No. 323, Pub. Acts 1945).

10. SAME—EQUAL PROTECTION.
> The equality of the Constitution is the equality of persons, and not of places; the equality of right, and not of enjoyment (U. S. Const. am. 14).

11. SAME—CLASSIFICATION PRESUMED VALID.
> That there was a sound basis in reason for the legislature's classification, bearing a direct relation to the object sought to be attained by the act, must be assumed until the contrary is shown.

12. SAME—BURDEN OF SHOWING INVALIDITY OF CLASSIFICATION.
> One who assails the classification in a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.

Appeal from Recorder's Court for the City of Detroit; Skillman (W. McKay), J. Submitted April 15, 1948. (Docket No. 68, Calendar No. 43,429.), Decided June 14, 1948.

Sam Zimberg and Mary Genoff were convicted of having in possession and offering for sale pike-perch caught in Lake Erie less than 15½ inches in size. Affirmed.

*Harry H. Wachs,* for appellants.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *James N. McNally,* Prosecuting Attorney, and *Robert Newton Smiley* and *Herbert Burdick,* Assistants Prosecuting Attorney, for the people.

DETHMERS, J. Defendants were convicted of violating Act No. 84, § 14, Pub. Acts 1929 (2 Comp. Laws 1929, § 6320), as amended by Act No. 323, Pub. Acts 1945 (Comp. Laws Supp. 1945, § 6320, Stat. Ann. 1946 Cum. Supp. § 13.1505), which reads in part as follows:

"It shall be unlawful to market, have in possession, transport or offer for sale * * * (i) pike-perch (yellow pickerel), of a less length than 15½ inches * * * Provided, That pike-perch (yellow pickerel) not less than 13 inches in length may be taken from Lake Erie: Provided further, That pike-perch (yellow pickerel) not less than 13 inches in length taken from the waters of Lake Erie may be sold or offered for sale at a dock or docks along Lake Erie: Provided further, That any such pike-perch (yellow pickerel) of a length less than 15½ inches shall not be otherwise offered for sale, bartered or sold within the limits of the State."

The fish which defendants were charged with having in their possession in the city of Detroit with intent to sell were pike-perch (yellow pickerel), all over 13 and under 15½ inches in length, taken from Lake Erie during open season and sold, by the fishermen who caught them, at docks along Lake Erie to the American Fish Company, which resold them to defendants.

Defendants assail the constitutionality of the act and contend that after permitting the taking and sale at docks along Lake Erie of 13-inch pike-perch the legislature may not prohibit the resale thereof elsewhere in the State.

It is universally held in this country that wild game and fish belong to the State and are subject to its power to regulate and control; that an individual may acquire only such limited or qualified property interest therein as the State chooses to permit. In *People* v. *Soule,* 238 Mich. 130, we said:

"This conservation legislation is clearly an exercise of the police power inherent in the State. The wild game and fish (*ferae naturae*) within its confines belong to the State. No private ownership or private property rights are involved in this inquiry. *McKenney* v. *Farnsworth,* 121 Me. 450 (118 Atl. 237)."

For cases involving the exercise of the State's powers to regulate and control the having in possession or taking of fish from waters within the jurisdiction of this State see *Osborn* v. *Charlevoix Circuit Judge,* 114 Mich. 655; *People* v. *Dornbos,* 127 Mich. 133; *People* v. *Lassen,* 142 Mich. 597; *People* v. *Setunsky,* 161 Mich. 624, and cases cited therein.

In *Ex Parte Maier,* 103 Cal. 476 (37 Pac. 402, 42 Am. St. Rep. 129), it is said:

"The wild game within a State belongs to the people in their collective sovereign capacity. It is not the subject of private ownership except in so far as the people may elect to make it so; and they may, if they see fit, absolutely prohibit the taking of it, *or traffic and commerce in it,* if it is deemed necessary for the protection or preservation of the public good."

To the same effect, see *Magner* v. *People,* 97 Ill. 320; *Geer* v. *Connecticut,* 161 U. S. 519 (16 Sup. Ct. 600, 40 L. Ed. 793), and cases therein cited.

As owner of wild game and fish the State may permit the taking thereof on terms and conditions and restrict their subsequent use.

"The general doctrine is well stated in 19 Cyc. p. 1006. The rule is there thus laid down: 'It is well established that, by reason of the State's control over fish and game within its limits, it is within the police power of the State legislature, subject to constitutional restrictions, to enact such general or special laws as may be reasonably necessary for the protection and regulation of the public's right in such fish and game, *even to the extent of restricting the use of or right of property in the game after it is taken or killed;* and such statutes have been enacted in probably all jurisdictions.'" *Ex Parte Blardone,* 55 Tex. Crim. 189 (115 S. W. 838).

In *Geer* v. *Connecticut, supra,* the court upheld the constitutionality of an act prohibiting the killing

or possession of game birds for the purpose of transporting them beyond the State, quoting with approval from *State* v. *Rodman,* 58 Minn. 393 (59 N. W. 1098), the following:

" 'And it is within the police power of the State, as the representative of the people in their united sovereignty, to make such laws as will best preserve such game, and secure its beneficial use in the future to the citizens, and to that end it may adopt any reasonable regulations, not only as to time and manner in which such game may be taken and killed, *but also imposing limitations upon the right of property in such game after it has been reduced to possession.*. Such limitations deprive no person of his property, because he who takes or kills game had no previous right of property in it, and when he acquires such right by reducing it to possession he does so subject to such conditions and limitations as the legislature has seen fit to impose.' "

See, also, *State* v. *Northern Pacific Express Co.,* 58 Minn. 403 (59 N. W. 1100) ; *State* v. *Dow,* 70 N. H. 286 (47 Atl. 734, 53 L. R. A. 314) ; *State* v. *Heger,* 194 Mo. 707 (93 S. W. 252) ; *State* v. *Leavitt,* 105 Me. 76 (72 Atl. 875, 26 L. R. A. [N. S.] 799).

In *Thompson* v. *Dana,* 52 Fed. (2d) 759, it was held that the privileges and immunities guaranteed to citizens of the United States by the 14th amendment to the Federal Constitution do not include the right to fish in the waters of a State nor may citizens of the State assert such right under that amendment unless the right is one guaranteed thereby to every citizen of the United States. With ownership of wild game reposing in the State, and individuals enjoying only such limited ownership as the State may grant, the State's refusal to grant unqualified ownership with all the incidents of ownership, such as the right of sale, is not, as defendants urge, the taking of property without due process of law.

Defendants also contend that the act is unconstitutional on the ground that its restriction of the sale of such fish to sales made at docks along Lake Erie denies defendants equal protection under the law, constitutes class legislation and amounts to an arbitrary, unreasonable and capricious classification.

In *Thompson* v. *Dana, supra,* the court held constitutional an Oregon act prohibiting angling from boats on some of the State's streams or portions thereof and permitting it on others.   In *Sherrill* v. *State,* 84 Ark. 470 (106 S. W. 967), involving an act prohibiting the use of fish traps in any waters of the State except in certain counties, the supreme court of Arkansas held that the act did not deny equal protection under the law, saying:

"Counsel for appellant contend that the statute in question is void because of the exemption in favor of the counties named therein.   They argue that the exemption operates in favor of the citizens of those counties, and is in violation of the Constitution, a grant to them of privileges and immunities not extended equally to all other citizens.   We do not think the statute has that effect.   The legislature may, in, the exercise of the police power, put into operation, game and fish laws in localities where they are needed or applicable, and such laws apply in such localities to all persons equally.   In counties or localities where the law does not extend all persons alike may enjoy the exemption.   In other words, all persons are forbidden the use of fish traps in the counties named, and all persons may use them in the exempted counties."

In *Osborn* v. *Charlevoix Circuit Judge, supra,* it was urged that an act making the closed season shorter in waters adjoining Monroe county than elsewhere was unconstitutional as constituting class legislation.   This Court, in respect thereto, said, "It.

cannot be called class legislation, for any citizen is at liberty to fish there during the open season."

*People v. Setunsky, supra,* involved an act licensing the use of power boats for commercial fishing and providing for their registration but imposing none of its requirements on the use of sailboats for the same purpose. This Court said:

"This cannot be held to be class legislation, for the reason that all citizens of this State have equal rights to fish in accordance with the rule prescribed, and all are bound by its restrictions."

In *State v. Griffin,* 69 N. H. 1 (39 Atl. 260, 41 L. R. A. 177, 76 Am. St. Rep. 139), an act of the State of New Hampshire, forbidding deposit of sawdust in Lake Massabesic, but containing no such prohibition as to other lakes, was attacked on the ground that it was not equal and uniform and did not apply to all people similarly situated, operating only against a class in a particular occupation (sawmill) in a part only of the State. The court said:

"The sole argument of the defendant in support of his position is that the act is inconsistent with 'the equality of right which the Constitution secures to all; that it discriminates in favor of some citizens to the detriment of others.' The argument is without foundation in fact. The statute makes no discrimination. It does not permit some persons and forbid others to put sawdust in the lake. Everybody is prohibited. 'Any person,' says the statute, who puts sawdust in the lake, shall be punished. True it is that the prohibition affects the owners of sawmills on the lake shore more seriously than the farmers, and it affects the farmers there dwelling more seriously than the farmers of Coos. Such is necessarily the effect of all restrictive laws. They affect some persons more than others. A similar objection might be made against the larceny law. It has no

effect upon the great body of the people, but upon a small class only, namely, the thieves. In the sense of the defendant's argument, it is as unequal as the sawdust law. * * * *The equality of the Constitution is the equality of persons, and not of places; the equality of right, and not of enjoyment.* A law that confers equal rights on all citizens of the State, or subjects them to equal burdens, and inflicts equal penalties on every person who violates it, is an equal law, though no one can enjoy the right, be subjected to the burden, or infringe its provisions, without going to or being in a particular part of the State. It does not discriminate in favor of some at the expense of others."

And so with the act involved in the instant case, while it may not insure equality of places nor of enjoyment, there is, under it, an equality of right, for all persons, to take the type of fish in question from Lake Erie and to buy or sell them at docks along its waters.

Defendants neglect to demonstrate the respect in which the act's provisions permitting sale of the fish at Lake Erie docks, but not elsewhere amounts to an arbitrary and unreasonable classification. That there was a sound basis in reason for the legislature's classification, bearing a direct relation to the object sought to be obtained by the act, must be assumed until the contrary is shown. *Osborn* v. *Charlevoix Circuit Judge, supra; Townsend* v. *Yeomans,* 301 U. S. 441 (57 Sup. Ct. 842, 81 L. Ed. 210) ; *Max Factor & Co.* v. *Kunsman,* 5 Cal. (2d) 446 (55 Pac. [2d] 177) ; *Thompson* v. *Dana, supra.* In *People* v. *Litvin,* 312 Mich. 57, we quoted with approval from *Cook Coffee Co.* v. *Village of Flushing,* 267 Mich. 131, the following:

" 'One who assails the classification in such a law must carry the burden of showing that it does not

rest upon any reasonable basis, but is essentially arbitrary.' "

The convictions are affirmed.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, BUTZEL, and CARR, JJ., concurred.