*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ERIC LEIENDECKER,

      Plaintiff-Appellant,

v

ASCENSION GENESYS HOSPITAL,

      Defendant/Cross-Plaintiff/Cross-
      Defendant-Appellee,

and

B.K. TEACHOUT INVESTIGATIONS, INC., doing
business as TEACHOUT SECURITY SERVICES,
INC.,

      Defendant/Cross-Defendant/Cross-
      Plaintiff-Appellee.

FOR PUBLICATION
January 13, 2026
10:13 AM

No. 372252
Genesee Circuit Court
LC No. 2023-119302-NZ

Before: YATES, P.J., and BOONSTRA and YOUNG, JJ.

BOONSTRA, J. (*concurring in part and dissenting in part*).

As it turns out, what is good for the goose is not always good for the gander.

The "goose" here is the doctrine of *domitae naturae*, while the "gander" is the doctrine of *ferae naturae*. *Domitae naturae* relates to domesticated animals, while *ferae naturae* relates to wild animals. See *Massengile v Piper*, 294 Mich 653, 657-658; 293 NW2d 897 (1940) (SHARPE, J., dissenting), citing *Andrews v Smith*, 324 Pa 455; 188 A 146 (1936)[1]; *Aikens v Dep't of Conservation*, 387 Mich 495, 502; 198 NW2d 304 (1972), citing *People v Zimberg*, 321 Mich 655,

---

[1] *Massengile* and *Andrews* used the term *mansuetae naturae*, which is the equivalent of *domitae naturae*.

658; 33 NW2d 104 (1948). Both are long-standing doctrines of our common law, but they are distinct doctrines, they apply in distinctly different ways, and they require distinctly different results in our legal system.

But the majority conflates them, and in doing so it opens the floodgates to a potential gaggle of claims that are simply not recognized in the common law. Until now, at least. But the majority has now determined that those on whose land wild animals enter may find themselves subject to legal theories of liability that have never before been recognized in Michigan. They may find that their goose is indeed cooked. The majority accomplishes this by ignoring Michigan caselaw and by altering our common law despite lacking the authority to do so. I must therefore respectfully dissent from the majority's reversal of the trial court's order granting summary disposition in favor of defendant Ascension Genesys Hospital on plaintiff's premises liability claim. I otherwise concur in the majority opinion.

As the majority recounts, Eric Leiendecker was attacked by a wild goose on one of Ascension's properties. He suffered unfortunate injuries. Leiendecker sued Ascension, as the owner of the property, claiming that Ascension "owed a duty to maintain the subject premises in a safe condition and to warn[2] of any dangers that they know, or should have known, may cause harm to their invitees[3]."

The classic example of liability arising in the context of *domitae naturae* is a dog bite. Under the common law in Michigan, the keeper of a domesticated animal can be held strictly liable[4] when "(1) one is the possessor of the animal, (2) one has scienter of the animal's abnormal dangerous propensities, and (3) the harm results from the dangerous propensity that was known or should have been known." *Trager v Thor*, 445 Mich 95, 99; 516 NW2d 69 (1994). "Possessor" in this context means "owner" or "keeper," and "keeper" "cannot be fairly construed as anything short of the exercise of dominion and control similar to and in substitution for that which ordinarily would be exerted by the owner in possession." *Id.* at 100, 103 (citation omitted).

Alternatively, the common law of Michigan provides that the keeper of a domesticated animal can be held liable under a negligence theory:

> [A] negligence cause of action arises when there is ineffective control of an animal in a situation where it would reasonably be expected that injury could occur, and injury does proximately result from the negligence. The amount of control required is that which would be exercised by a reasonable person based upon the total

---

[2] Leiendecker does not argue on appeal that Ascension owed or breached a duty to warn; he instead argues that Ascension "breached [its] legal duties to Leiendecker by failing to remove the goose from the property."

[3] It is undisputed that Leiendecker was an invitee at the time of the incident.

[4] Michigan has also enacted a statute imposing strict liability in certain circumstances. MCL 287.351(1).

situation at the time, including the past behavior of the animal and the injuries that could have been reasonably foreseen." [*Id*. at 106 (citation omitted).]

By contrast, wild animals (*ferae naturae*) are by their very nature not subject to human control, they therefore "belong[] to the state and [are] subject to the state's power of regulation and control," and an individual may "acquir[e] in such game only the qualified property interest which the state permits." *Glave v Michigan Terminix Co*, 159 Mich App 537, 539.540; 407 NW2d 36 (1987). As a consequence, when a wild animal causes injury, a person may be held liable "[b]y asserting dominion over [it] and keeping it." *Id*. at 540. But the person "could not be liable without exercising dominion, control or possession over [the animal]." *Id*. at 541.[5]

The majority entirely ignores *Glave's* preclusion of liability, in the *ferae naturae* context, unless the defendant exercised "dominion, control or possession" over a wild animal. Instead, the majority misapplies *Tripp v Baker*, 346 Mich App 257, 266-268; 12 NW3d 45 (2023), a *domitae naturae* case, to this *ferae naturae* case. *Tripp* was a dog bite case arising in the premises liability context. The Court noted that a premises possessor generally "has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards." *Id*. at 263 (citation omitted). Ultimately, this Court held, under *Lugo v Ameritech Corp, Inc*, 464 Mich 512; 629 NW2d 384 (2001),[6] that there remained a genuine issue of fact as to whether the dog "was an open and obvious danger." But the Court nonetheless affirmed the trial court's dismissal of the plaintiff's premises liability claim on the ground that the plaintiff was a trespasser, not an invitee.

There are a number of problems with the majority's reliance on *Tripp*. First, *Tripp's* premises liability analysis relied on *Lugo*, which was reversed by *Kandil-Elsayed*, 512 Mich at 132-143. Second, *Tripp's* premises liability analysis was in any event dictum, because it was not essential to the Court's ruling. See *Auto Owners Inc Co v Seils*, 310 Mich App 132, 160 n 7; 871 NW2d 530 (2015). Third, the premises liability claim in *Tripp* was asserted not against the dog-owner (who was a tenant at the property), but rather against the landlords for their failure to repair a fence and their alleged knowledge of the aggressive nature of the dog it contained. Further, *Tripp*

---

[5] In *Glave* the defendants had sprayed city buildings in an effort to encourage the departure of pigeons, which the plaintiff alleged caused the pigeons to flock to her neighborhood and home. The Court distinguished those facts from those in *Andrews v Andrews*, 242 NC 382; 88 SE2d 88 (1955), in which the defendant had "deliberately attracted large numbers of wild geese to a large artificial pond constructed within four hundred feet of plaintiffs' lands, and over a period of years the pond became a base for the ever-widening and increasingly expensive predations of the geese on plaintiffs' crops." *Glave*, 159 Mich App at 540-541. In any event, even if actions that attract wild animals could properly fall within an exception to the doctrine of *ferae naturae*, Leiendecker does not allege in this case that Ascension took any action to induce, entice, or otherwise attract the goose onto its property.

[6] *Lugo* was overruled by our Supreme Court in *Kandil-Elsayed v F & E Oil Inc*, 512 Mich 95; 1 NW3d 44 (2023).

-3-

appears to reflect a lack of clarity as to whether, in that *domitae naturae* context, the Court was considering the premises possessor's liability (for the dog bite injury) under a strict liability or a negligence standard. For example, while noting that "premises liability required a plaintiff to prove the elements of negligence," *Tripp*, 346 Mich App at 266 (citation and internal quotation marks omitted), it concluded that the plaintiff's complaint was "facially valid" because it alleged, in part, that "the defendant had knowledge of the dog's dangerous tendencies," *id*. at 269, (a strict liability standard, see *Trager*, 445 Mich at 99).

Most importantly, the majority errs by importing into the law of *ferae naturae* the distinctly different legal principles that apply in the context of *domitae naturae*.[7] As this Court made clear in *Glave*, liability does not arise in the *ferae naturae* context "without exercising dominion, control or possession" over the wild animal. *Glave*, 159 Mich App at 541. As in *Glave*, plaintiff made no such allegation in his complaint in this case. Consequently, plaintiff failed to state a claim on which relief could be granted, and the trial court properly granted summary disposition under MCR 2.116(C)(8).[8]

---

[7] The majority inaccurately characterizes *Tripp* as holding that an "animal" can be a dangerous condition of the land for purposes of a premises liability claim. However, *Tripp* actually held that a "dog" can be a dangerous condition of the land. *Tripp*, 346 Mich App at 267-269. And while the Court in *Tripp* may not have highlighted the domesticated nature of the dog, it would have had no reason to do so, or to consider or distinguish the *ferae naturae* doctrine, because the entire context of the matter before it was that of a domesticated dog to which the doctrine of *domitae naturae* applied. The majority's characterization of *Tripp* (a) is inaccurate, (b) flaunts our holding *Glave*, (c) takes *Tripp* out of its proper context, and (d) mechanically applies its out-of-context reading of *Tripp* to alter our common law of *ferae naturae*.

[8] The majority characterizes *Glave* as applying only to a claim for "negligence," not premises liability. However, premises liability is a form of a negligence claim. *Kandil-Elsayed v F & E Oil Inc*, 512 Mich 95; 1 NW3d 44 (2023) ("All negligence actions, including those based on premises liability, require a plaintiff to prove four essential elements: duty, breach, causation, and harm."). Moreover, the plaintiff in *Glave* brought claims for both nuisance and negligence, and the circumstances of *Glave* obviously could not have supported a premises liability claim because the defendants were not in "possession and control over the land," *Scola v JP Morgan Chase Bank, Nat'l Assoc*, 506 Mich 924 (2020), on which the alleged injury (pigeons on plaintiff's property) was incurred. But the holding in *Glave* broadly precluded liability for any form of negligence claim with regard to a wild animal, under the doctrine of *ferae naturae*. Again, *Glave* held that a person may be held liable "[b]y asserting dominion over [a wild animal] and keeping it," but that the person "could not be liable without exercising dominion, control or possession over [the animal]." *Glave*, 159 Mich App at 540-541. The Court concluded, "Defendants never asserted dominion over the birds or reduced them to possession; hence the birds remained free, and the defendants were not responsible for their migrations. To hold otherwise would put the imagination to ludicrous shifts." *Id*. at 541 (citation omitted). Like the plaintiff in *Glave*, Leiendecker "did not allege such dominion, control or possession" and accordingly "failed to state a claim upon which relief could be granted." *Id*.

This Court's unpublished opinion in *Heuschneider v Wolverine Superior Hospitality, Inc*, unpublished opinion per curiam of the Court of Appeals, issued June 4, 2019 (Docket No. 341053) further supports this conclusion.[9] In *Heuschneider*, the plaintiff filed suit against a hotel owner after suffering a spider bite while staying in a hotel room. As this Court recounted:

> The trial court granted summary disposition for lack of legal duty and failure to present evidence of foreseeability. The court found that no legal duty was owed to the plaintiff based on the doctrine of ferae naturae, or *wild things*, over which defendant had no control. . . . The trial court found that no duty was owed to the plaintiff based on the holding in *Glave v. Michigan Terminix Co.*, 159 Mich App. 537; 407 N.W.2d 36 (1987), which ascribed a duty only where a wild animal is under the control of an alleged tortfeaser. "By asserting dominion over a wild animal and keeping it, an individual may be held liable for personal injuries caused by the animal's conduct." *Id.* at 540. Here, the court found the fact that the spider was a wild animal an absolute defense to each of plaintiff's claims of premises liability, innkeeper's liability, negligence, and nuisance. [*Heuschneider,* unpub op at 2.]

This Court concluded that the trial court erroneously dismissed the plaintiff's claim under the innkeeper's statute, because a spider meets the common definition of "vermin" and the innkeeper's statute therefore applied. The Court stated:

> The doctrine of ferae naturae has its genesis in the common law. The common law remains in force until modified. *Wold Architects and Engineers v. Strat*, 474 Mich 223, 233; 713 W.2d 750 (2006). "Our statute limiting the liability of an innkeeper is in derogation of the common law and must be strictly construed." *Davis v. Cohen*, 253 Mich 330, 335; 235 NW 173 (1931). The trial court explicitly found that the innkeepers' liability statute was inapplicable to this case because it found that spiders were not vermin. This was erroneous. [*Heuschneider,* unpub op at 3.]

Significantly, this Court in *Heuschneider* only found the doctrine of *ferae naturae* to be inapplicable with respect to the plaintiff's claim under the innkeeper's statute. And that, of course, is because the Legislature is empowered to alter the common law. See *People v Woolfolk*, 304 Mich App 450, 475; 848 NW2d 169 (2014). *Heuschneider* left the doctrine of *ferae naturae* in place with respect to the plaintiff's premises liability, negligence, and nuisance claims, reversing the trial court's grant of summary disposition *only* on the plaintiff's statutory "innkeeper's" claim.

As our Supreme Court recently reiterated in *Kandil-Elsayed v F & E Oil Inc*, 512 Mich 95; 1 NW3d 44 (2023):

> All negligence actions, including those based on premises liability, require a plaintiff to prove four essential elements: duty, breach, causation, and harm. The

---

[9] "Unpublished opinions may be considered persuasive, even if they are not binding." *Elizabeth Trace Condominium Ass'n v America Global Enterprises, Inc*, 340 Mich App 435, 444; 986 NW2d 412 (2022).

first element, duty, is essentially a question whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person. [*Id*. at 110 (citation and quotation marks omitted).]

The Court also noted that "[i]t is well settled in Michigan that the question whether the defendant owes an actionable legal duty to the plaintiff is one of law which the court decides." *Kandil-Elsayed*, 512 Mich at 112.[10]

This Court made clear in *Glave* and *Heuschneider* that, absent the exercise of dominion, control, or possession over a wild animal, there exists no legal duty with respect to any injuries that the wild animal may cause. That is because the doctrine of *ferae naturae* eliminates that duty. There consequently can be no liability under a premises liability theory and, the question of duty being one of law, *Kandil-Elsayed*, 512 Mich at 112, the majority errs by allowing plaintiff's premises liability claim to go forward instead of affirming the trial court's dismissal of that claim under MCR 2.116(C)(8).

The majority compounds its errors by implicitly applying (and even expanding upon) the caselaw of other jurisdictions. It does so by blindly applying *Tripp*—which expressly relied upon out-of-state cases in concluding that a dog can be a dangerous condition of the land. Yet, the out-of-state cases on which *Tripp* relied[11] were themselves, in addition to other distinguishing features, "dog bite" cases, *i.e.*, *domitae naturae*, having nothing whatsoever to do with the doctrine of *ferae naturae*. See *Village Green Alzheimer's Care Home, LLC v Graves by and through Graves*, 650 SW3d 608 (Tex App 2021), and *Giacalone v Housing Auth of Town of Wallingford*, 306 Conn 399, 51 A3d 352 (2012).[12]

Even if we were to look to out-of-state cases for guidance, a more appropriate one would be *Nicholson v Smith*, 986 SW2d 54, (Tex App 1999). In *Nicholson*, the plaintiff sued a

---

[10] As the majority notes, the trial court granted summary disposition to Ascension under MCR 2.116(C)(8) (failure to state a claim on which relief could be granted). But this does not mean, as the majority describes, that we are "limited to reviewing the facts alleged in plaintiff's second amended complaint." Certainly, we must accept those factual allegations as true for purposes of a (C)(8) analysis. But we have a broader duty than just that; we have a duty to assess the "*legal sufficiency* of a claim based on the factual allegations." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159-160; 934 NW2d 665 (2019). Simply put, Leiendecker's premises liability claim fails because, accepting his *factual* allegations as true, his claim is *legally* insufficient.

[11] The majority properly does not rely on other out-of-state cases cited by Leiendecker. Indeed, one need only take a gander at those cases to discern that they also are not supportive of the majority's conclusion in this case.

[12] Although this Court may look to the law of other jurisdictions for guidance, we generally do so when "there is a lack of controlling Michigan precedent." *Butler v Simmons-Butler*, 308 Mich App 195, 214 n 4; 863 NW2d 677 (2014).

recreational park and its owners after her now-deceased husband was stung by fire ants while he worked on the underside of his house trailer. The Texas Court of Appeals affirmed the dismissal of the plaintiff's claim because "[t]he doctrine of *ferae naturae* defeats [the plaintiff's] premises liability claim as a matter of law." *Id.* at 64. I appreciate that the court in *Nicholson* did not establish a bright line rule, and it thus left open the possibility, under the common law of Texas, that a claim might conceivably be actionable "with regard to wild animals found in artificial structures or places where they are not normally found; that is, stores, hotels, apartment houses, or billboard, if the landowner knows or should know of the unreasonable risk of harm posed by an animal on its premises, and cannot expect patrons to realize the danger or guard against it."[13] *Id.* at 62. But the Texas Court of Appeals found that such exceptional circumstances did not exist and were not alleged. Instead, the court in *Nicholson*—citing *Glave*, no less—affirmed the dismissal of the claim under the applicable law:

> In general, the law does not require an owner or possessor of land to anticipate the presence of, or guard invitees against the harm from, wild animals unless he or she has reduced them to possession, harbors them, or has introduced onto the premises wild animals which are not indigenous to the locality. [*Id.* at 61.][14]

The majority also errs in a couple of other respects. First, it does not establish a clear and workable new standard for this new type of premises liability claim. Specifically, it finds that Leiendecker sufficiently alleged that Ascension "knew or should have known" that the goose was an "artificial risk to visitors" that created "a dangerous condition of the land." But it ultimately concludes that "because plaintiff alleged that the goose was a condition of the land whose

---

[13] Even if the common law of Michigan arguably should be altered to create an exception for such circumstances, Leiendecker has not alleged that any such circumstances exist in this case. Consequently, allowing Leiendecker's premises liability claim to survive a motion for summary disposition under MCR 2.116(C)(8), as the majority now does, simply sends the parties and the judicial system on a wild goose chase.

[14] The case cited by my concurring colleague, *Hillis v McCall*, 602 SW3d 436, 442 n 10 (Texas Sup Ct, 2020), is no different. Indeed, *Hillis* reversed the Texas Court of Appeals' reversal of the trial court's grant of summary disposition to the defendant property owner. And, like the court in *Nicholson*, it only recognized—under the common law of Texas—a limited exception to the doctrine of *ferae naturae* "with regard to wild animals found in artificial structures or places where they are not normally found; that is, stores, hotels, apartment houses, or billboards, if the landowner knows or should know of the unreasonable risk of harm posed by an animal on its premises, and cannot expect patrons to realize the danger or guard against it." *Hillis*, 602 SW3d at 441 (citations omitted). But no such exception exists in the common law of Michigan and, in any event, it would not apply to the facts and circumstances of this case. The court in *Hillis* also did not, as is suggested, "describe" any broader exception to the doctrine of *ferae naturae*. To the contrary, it expressly declined to address whether any additional exception might exist. *Id.* at 442 n 10. The majority in this case, by contrast, creates out of whole cloth a vastly broader exception to the doctrine of *ferae naturae* than has ever been recognized in Michigan (or perhaps anywhere).

dangerousness was known to Ascension and Ascension failed to warn[15] [Leiendecker] about the dangerous goose, he has raised a legally sufficient premises liability claim against Ascension." I am left wondering what precisely will be required, under the now-revised common law of Michigan, for a plaintiff to plead and succeed on a premises liability claim arising out of an injury caused by a wild animal. And I am sure the trial courts will have goose bumps anticipating the "ludicrous shifts" to which our imaginations will be put going forward. *Glave*, 159 Mich App at 541.

Second, and importantly, the majority drastically alters our legal landscape by, as noted, effecting a change in our common law. And it not only does so without a proper legal basis, but it does so without authority and without exercising appropriate prudence. As this Court has stated:

> [W]e are mindful that we are an error-correcting court. *Burns v Detroit (On Remand),* 253 Mich App 608, 615; 660 NW2d 85 (2002). As such, we must confine our role to that function. Were we inclined to effect a significant change to Michigan law, such as by abrogating established common law in favor of a rule more to our liking, "prudence would counsel against it because such a significant departure from Michigan law should only come from our Supreme Court [or the Legislature], not an intermediate appellate court." *Teel v Meredith,* 284 Mich App 660, 666; 774 NW2d 527 (2009) (declining to recognize a cause of action for spoliation of evidence); see also *Dahlman v Oakland Univ,* 172 Mich App 502, 507; 432 NW2d 304 (1988) (declining to recognize a cause of action for breach of an implied covenant of good faith and fair dealing "because such a radical departure from the common law and Michigan precedent should come only from the Supreme Court"). [*Woolfolk*, 304 Mich App at 475.]

See also, *MK by Next Friend Knaack v Auburnfly, LLC*, unpublished opinion per curiam of the Court of Appeals, issued December 17, 2024 (Docket No. 364577), unpub op at 4 ("[I]t is not our role, as an intermediate appellate court, to change the common law; any such change should instead come from the Legislature or our Supreme Court.") (citation omitted). The majority nonetheless, without waiting for those who might properly change the common law, plunges forward headlong into uncharted waters. Its decision may prove to be the goose that laid the golden egg for the more litigious members of our society.

I would instead uphold and apply Michigan's existing and well-established common-law doctrine of *ferae naturae* and affirm the trial court's grant of summary disposition in favor of Ascension on Leiendecker's premises liability claim. Because the majority does not do so, I respectfully dissent in that regard and otherwise concur in the majority opinion.

/s/ Mark T. Boonstra

---

[15] Again, Leiendecker does not argue on appeal that Ascension owed or breached a duty to warn; he instead argues that Ascension "breached [its] legal duties to Leiendecker by failing to remove the goose from the property."